45 So.3d 380 (2009)
Adam Dwayne LUCAS
v.
STATE of Alabama.
CR-08-0575.
Court of Criminal Appeals of Alabama.
December 18, 2009.
*381 Charles Raymond Waits III, Decatur, for appellant.
Troy King, Atty. Gen., and Stephen N. Dodd, Asst. Atty. Gen., for appellee.
PER CURIAM.
The appellant, Adam Dwayne Lucas, was convicted of two counts of robbery in the first degree, violations of § 13A-8-41, Ala.Code 1975. He was sentenced to concurrent terms of 20 years in prison for each count.
The State's evidence tended to show the following. On January 1, 2007, Daniel DeQuesada, a pizza-delivery driver, was robbed by a black man wearing a hooded jacket and a ski mask. DeQuesada testified that the man pointed a gun at him and ordered him to surrender his money. Diana Horsewood testified that when she was delivering pizzas on January 2, 2007, a black man wearing a hooded jacket and ski mask robbed her. She testified that the robber pointed a gun at her. Neither could identify Lucas as the person who robbed them, although both said that the *382 individual who robbed them was driving a sport-utility vehicle ("SUV").
David Shutt, a Decatur police officer, testified that on January 3, 2007, Lucas reported that his vehicle, a pewter-colored SUV, had been stolen. The vehicle was later recovered after suspects in a home invasion abandoned the vehicle while being pursued by police. Pieces of a toy gun were recovered from the vehicle.
Investigator Greg Pinkard of the Franklin County Sheriff's Department testified that Lucas admitted that he and his codefendant, Ira Harris, had robbed two pizza-delivery drivers.
The jury convicted Lucas of two counts of robbery in the first degree. At Lucas's sentencing hearing, the circuit court made the following findings of fact:
"I'll make a finding that it's a plastic toy gun. I don't think there's any dispute that [interruption by counsel] that
"I'll make that finding regardless of what the analysis would or would not show. I'm enough [interruption by counsel] satisfied that that's a plastic toy gun; however, I am convinced that the law is that it could be a loaded gun or an unloaded gun or it could be a facsimile or plastic or toy gun. But the standard is that it is a deadly weapon under the terms of the definition of the statute if it would lead any person present to reasonably believe it to be a deadly weapon or a dangerous instrument.
"I think the testimony there is uncontroverted that regardless whether it was a toy or cocked and loaded pistol, the person believed it to be a deadly weapon or dangerous instrument. They believed it to be a toynot a toy but a real pistol."
(R. 358-59.)
The only issue Lucas raises on appeal is whether the circuit court erred when it applied the firearm-enhancement statute, § 13A-5-6(a)(4), Ala.Code 1975, to enhance his sentence for robbery because, he asserts, the gun he used in the robberies was a toy gun and not a "firearm or deadly weapon." He relies on Sanders v. State, 947 So.2d 432 (Ala.Crim.App.2006), and Snowden v. State, 842 So.2d 24 (Ala. Crim.App.2002), to support his argument.
Section 13A-8-41, Ala.Code 1975, defines robbery in the first degree, and provides:
"(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
"(1) Is armed with a deadly weapon or dangerous instrument; or
". . . .
"(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed."
Section 13A-8-43, Ala.Code 1975, provides, in pertinent part:
"(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
"(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
*383 Section 13A-5-6(a)(4), Ala.Code 1975, often referred to as the firearm-enhancement statute, provides:
"For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, or a Class A felony criminal sex offense involving a child as defined in Section 15-20-21(5), [the sentence shall be] not less than 20 years."
Subsection (a)(4), Ala.Code 1975, was added by an amendment to § 13A-5-6 in 1981. In amending this statute, the legislature wrote that its purpose was "[t]o amend Section 13A-5-6, Code of Alabama 1975, relating to sentences of imprisonment for felonies, so as to set the penalty for using or attempting to use a deadly weapon in the commission of a felony." Title to Act No. 81-840, Ala. Acts 1981.
Section 13A-5-6, Ala.Code 1975, does not define a firearm or deadly weapon. However, "firearm" is defined in § 13A-8-1(4), Ala.Code 1975, as: "A weapon from which a shot is discharged by gunpowder." "Deadly weapon" is defined in § 13A-1-2(7), Ala.Code 1975, as:
"A firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious physical injury. The term includes, but is not limited to, a pistol, rifle, or shotgun; or a switchblade knife, gravity knife, stiletto, sword, or dagger; or any billy, black-jack, bludgeon, or metal knuckles."
In examining the above statutes, we keep in mind the following principles of statutory construction:
"`The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. If possible, the intent of the legislature should be gathered from the language of the statute itself.' Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala.1991). `Where a statutory pronouncement is distinct and unequivocal, there remains no room for judicial construction and the clearly expressed intent of the legislature must be given effect.' Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985) (citing Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co., 431 So.2d 534 (Ala. 1983))."
Ex parte Soto, 991 So.2d 691, 692 (Ala. 2008).
"A basic rule of review is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation. This is especially true in death penalty cases. Ex parte Clements, Ala., 370 So.2d 723 (1979); Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956). Penal statutes are to reach no further in meaning than their words. Clements, supra; Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952)."
Berard v. State, 402 So.2d 1044, 1050 (Ala. Crim.App.1980).
As stated above, Lucas relies on Sanders and Snowden to support his argument. In Sanders, the defendant was convicted of robbery in the first degree and his sentence was enhanced pursuant to § 13A-5-6(a)(4), Ala.Code 1975. The testimony at trial showed that Sanders entered a Texaco Food Mart, put his hand under his shirt with his finger sticking out so it appeared that he had a gun, and demanded $200. We held that the circuit court incorrectly applied § 13A-5-6(a)(4), Ala.Code 1975. It was undisputed that the victim could clearly see that Sanders was not armed with a gun but was using his finger to mimic a weapon. In Snowden, this Court held that a Rule 32 petitioner's claim that he merely stated that he was armed during the robbery, when in fact he was not, *384 required a remand to the trial court for specific findings of fact. We stated:
"The appellant's argument may be meritorious. The firearm enhancement set forth in § 13A-5-6(a)(4), Ala.Code 1975, applies only in those cases `in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony.' In this case, based on statements it made during the guilty plea proceedings, it appears that the trial court mistakenly believed that the firearm enhancement could be applied even in cases in which the defendant only represented that he was armed with a firearm. However, such an interpretation is contrary to the plain language of § 13A-5-6(a)(4), Ala.Code 1975. During the Rule 32 proceedings, the State did not specifically refute, and the circuit court did not address, the appellant's contention. Therefore, we remand this case to the circuit court with instructions that that court make specific, written findings of fact as to the appellant's contention."
842 So.2d at 25.
Our research revealed few Alabama cases that address the scope of § 13A-5-6(a)(4), Ala.Code 1975. See Ex parte McCree, 554 So.2d 336 (Ala.1988) (firearm enhancement may be applied to only those felonies involving intentional criminal conduct); Sorrells v. State, 667 So.2d 142, 144 (Ala.Crim.App.1994) (firearm enhancement may be applied by the circuit court even in the "absence of a specific jury finding with regard to the use of a firearm,"); Hammond v. State, 497 So.2d 558 (Ala.Crim. App.1986) (firearm enhancement may be applied to the sentence of an unarmed codefendant when the other codefendant is armed). Indeed, our research has revealed no case that specifically holds that using a toy gun during a robbery necessitates the application of the firearm-enhancement statute.
In determining whether there is sufficient evidence to support a conviction for robbery in the first degree, we look to the victim's perceptions:
"In a prosecution for first degree robbery, the robbery victim does not actually have to see a weapon to establish the element of force; his or her reasonable belief that the robber is armed is sufficient. Dinkins v. State, 584 So.2d 932 (Ala.Cr.App.1991); Breedlove v. State, 482 So.2d 1277 (Ala.Cr.App.1985). The test to determine whether a person reasonably believes that an object is a deadly weapon is a `subjective' one. James v. State, 549 So.2d 562 (Ala.Cr.App. 1989). `It focuses on the "reaction of the victim to the threats of the robber." State v. Hopson, 122 Wis.2d 395, 362 N.W.2d 166, 169 (1984).' 482 So.2d at 1281."
Rice v. State, 620 So.2d 140, 141-42 (Ala. Crim.App.1993).
However, when determining whether a defendant's sentence should be enhanced pursuant to § 13A-5-6(a)(4), Ala.Code 1975, we must look to the statutory definitions of the terms "firearm" and "deadly weapon" contained in § 13A-5-6(a)(4). See McCaskill v. State, 648 So.2d 1175, 1178 (Ala.Crim.App.1994) ("In this case, the appellant was sentenced pursuant to Ala.Code 1975, § 13A-5-6(a)(4), which provides that the sentence for `a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, [is] not less than 20 years.' Emphasis added. Clearly, a `BB gun' is not a `firearm' which is defined as "[a] weapon from which a shot is discharged by gunpowder.' § 13A-8-1(4)."); Sumpter v. State, 480 So.2d 608, 614 (Ala. Crim.App.1985) ("The definition of deadly weapon does not require that a firearm be *385 loaded at the time of the offense. ... The trial judge properly sentenced the appellants in this cause in accordance with [§ 13A-5-6(a)(4)].").
Because there is little Alabama law on this issue, we have looked to the federal courts for guidance. The comparable federal sentencing guideline, U.S.S.G. § 2B3.1(b)(2), 18 U.S.C., provides enhanced penalties for those who commit robbery:
"(A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished, or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels."
In addressing the scope of this federal statute, the United States Court of Appeals for the Eleventh Circuit in United States v. Koonce, 991 F.2d 693 (11th Cir. 1993), stated:
"The issue squarely presented by the facts of this case is how to treat for robbery offense level enhancement purposes an object that appears to be a firearm but in reality is merely a dangerous instrument, as those terms are currently defined in the Sentencing Guidelines. This issue is one of first impression, due in large part to the fact that until a November 1, 1991 amendment to the Guidelines, brandishing a firearm and brandishing a dangerous weapon were treated the same. Old U.S.S.G. § 2B3.1(b)(2)(C) provided that a robbery defendant who had brandished, displayed, or possessed `a firearm or other dangerous weapon' received an enhancement of three offense levels.
"The amendment distinguished between firearms and dangerous weapons. Under the amended version of the Guidelines, applicable to this case, the two types of weapons are treated differently. Guideline provisions in effect now and at the time of sentencing provide that a robbery defendant who `brandished, displayed, or possessed' a firearm is to have his base offense level increased by five levels. U.S.S.G. § 2B3.1(b)(2)(C). If the object `brandished, displayed, or possessed' is a dangerous weapon instead of a firearm, then the enhancement is three levels, not five. Id. § 2B3.1(b)(2)(E).
"Supporting Koonce's position that a BB gun is a dangerous weapon and not a firearm is this seemingly straightforward definition of firearm:
"`"Firearm" means (i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver of any such weapon; (iii) any firearm muffler or silencer; or (iv) any destructive device. A weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm.'
"Id. § 1B1.1, comment, (n. 1(e)) (emphasis added). That seems simple enough.
"The Government argues, and the district court found, however, that the victim in this case quite reasonably thought that the pistol was the real thing, a firearm. Koonce cannot question the reasonableness of such a perception, because he confessed that he had used `a BB gun of mine that looks like a real gun, somewhat like a 45 automatic.' Koonce's contention is that reality, and not appearance, is the criterion insofar as the Guidelines' definition of firearms is concerned. The strongest support for *386 his position arises from the fact that commentary to the Guidelines expressly provides that insofar as dangerous weapons are concerned, appearances count as well as reality; but no such provision is made concerning firearms. The same application note that gives the definition of `firearm' quoted above also contains in another subpart this definition:
"`"Dangerous weapon" means an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon.'
"Id. comment, (n. 1(d)) (emphasis added).
"That is not all. The commentary says the same thing again in a second place. The second application note to the robbery offense level section of the Guidelines, U.S.S.G. § 2B3.1, plainly states:
"`When an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon for the purposes of subsection (b)(2)(E).'
"Subsection (b)(2)(E) is the provision for a three-level increase in the offense level where a dangerous weapon was brandished, displayed, or possessed. By contrast, there is no provision that an object that appeared to be a firearm should be treated as a firearm for purposes of a five-level increase under § 2B3.1(b)(2)(C).
"The district court stated no rationale for treating the BB gun as a real firearm except to state its conclusion that, `Thinking that it was real equates it with being a firearm that could do her harm and therefore five levels are appropriate in this situation.' Under the Guidelines and their commentary, that would be true insofar as a three-step increase for dangerous weapons is concerned, but it is at least impliedly not true with look-alike firearms and a five-step enhancement.
"The Government contends that, `the only support for defendant's argument that victim perception is irrelevant is the application note's silence on the issue,' and says, `[t]hat silence is only conspicuous because the analogous dangerous weapon application note expressly addresses victim perception.' That may be true, but merely describing the argument does not rebut it. Conspicuously absent from the Government's brief is any credible explanation for why the Sentencing Commission, if it intended victim perception to control over reality for firearms enhancement, would not have said so as it did twice for dangerous weapon enhancement.
"From that which is and that which is not in the commentary, we conclude that if the Sentencing Commission had intended to have appearances count over reality for `firearm' definition purposes it would have said so, as it did for `dangerous weapon' definition purposes. The canon of statutory construction that the inclusion of one implies the exclusion of others is well-established. See, e.g., Gozlon-Peretz v. United States, 498 U.S. 395, 403-404, 111 S.Ct. 840, 846-47, 112 L.Ed.2d 919 (1991); Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983); United States v. Giltner, 972 F.2d 1563, 1565 (11th Cir.1992); United States v. Jordan, 915 F.2d 622, 628 (11th Cir.1990), cert, denied, [499] U.S. [979], 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991). The popularity of that canon with courts stems from more than the fact that it dresses well in Latin: inclusio unius est exclusio alterius. *387 The canon is frequently cited and employed because in many circumstances it makes good sense. This case is a prime example.
"We hold that a BB gun that looks like a real firearm and is perceived by the victim of a robbery to be such is not a firearm for purposes of the five-step enhancement of the base offense level for robbery under U.S.S.G. § 2B3.1(b)(2)(C). It is a dangerous weapon which leads to a three-step enhancement under § 2B3.1(b)(2)(E)."
991 F.2d at 696-98. See United States v. Robinson, 20 F.3d 270 (7th Cir.1994).
Unlike Congress, Alabama has not enlarged the definition of "deadly weapon" contained in § 13A-l-2(7), Ala.Code 1975, to encompass a toy gun. We are bound by the relevant statutes. A toy gun is not a "firearm" as that term is defined in § 13A-8-1(4), Ala.Code 1975. Nor is a toy gun a "deadly weapon" as that term is defined in § 13A-l-2(7), Ala.Code 1975. (See the Alabama Supreme Court's discussion in Herndon v. State, 563 So.2d 1065 (Ala.1990).).
Accordingly, the circuit court erred in enhancing Lucas's sentences under the firearm-enhancement statute. This case is hereby remanded to the circuit court for that court to resentence Lucas without application of the enhancement contained in § 13A-5-6(a)(4), Ala.Code 1975. Due return should be filed in this Court within 52 days from the date of this opinion.
REMANDED WITH INSTRUCTIONS.[*]
WISE, P.J., and KELLUM and MAIN, JJ., concur.
WINDOM, J., concurs in the result.
WELCH, J., dissents, with opinion.
WELCH, Judge, dissenting.
The jury in this case heard disputed testimony concerning whether Adam Dwayne Lucas was armed with a deadly weapon or dangerous instrument during the course of two robberies of pizza-delivery drivers. The jury was instructed regarding the effect of the rebuttable presumption as defined in § 13A-8-41(b), Ala. Code 1975. The jury found that Lucas was armed with a firearm during the robberies and thus, returned verdicts of guilt for both counts of first-degree robbery. The jury therefore made a factual determination that Lucas was armed with a deadly weapon or dangerous instrument during the course of the robberies. At the sentence hearing, Lucas offered as evidence pieces of a plastic toy gun recovered from a different crime scene involving Lucas to show that Lucas was not truly armed with a firearm when he committed the robberies. The trial court found that Lucas had not, contrary to the jury's determination, been armed with a gun during the robberies, but nevertheless, determined that the firearm enhancement, § 13A-5-6, Ala. Code 1975, applied to Lucas because the victims believed that Lucas was armed during the robberies.
I believe that the trial court properly applied the firearm enhancement to Lucas's sentence, albeit for the wrong reasons. I believe the proper reason for the application of the enhancement is that the jury considered disputed evidence and then made a factual finding that Lucas was armed. Therefore, I believe that the majority opinion reversing Lucas's sentences because the trial court improperly applied the firearm enhancement, § 13A-5-6, Ala. *388 Code 1975, negates the jury's factual finding.
Contrary to the majority opinion, I note that under our legal system, each government may enact different methods of dealing with criminal issues arising within its jurisdiction. The fact that the federal government has decided to implement a different method of dealing with firearm enhancement is not a factor that should guide our decision about the scope of § 13A-5-6, Ala.Code 1975. The federal decisions regarding the federal government's enhancement statutes are not grounded on constitutional principles and thus are merely decisions by another sovereign regarding how it will deal with a criminal-law issue. Such decisions might be useful as a guide to writing legislation, but they have no persuasive effect in deciding how Alabama's firearm-enhancement statute should be construed. For the reasons set forth below, I respectfully dissent.
Lucas and Ira Joe Harris, Jr., were charged by indictment with two counts of robbery in the first degree, violations of § 13A-8-41, Ala.Code 1975. The cases were severed for trial.
The indictment, in pertinent part, charged Lucas as follows:
"The Grand Jury of said County charges that before the finding of this indictment Ira Joe Harris Jr. and Adam Dwayne Lucas, whose names are to the Grand Jury otherwise unknown, did, in the course of committing a theft of a mixed quantity of money in lawful currency of the United States of America, the property of Villarreal Pizza, Incorporated, a corporation doing business as Domino's Pizza, of a total aggregate value of $42.00, a further and better description of which is to the Grand Jury otherwise unknown, threaten the imminent use of force against the person of Daniel Ashley deQuesada, with the intent to compel acquiescence to the taking of or escaping with the property, while the said defendants were armed with a deadly weapon, or dangerous instrument, to-wit: a pistol, in violation of section 13A-8-41 of the Code of Alabama,
"COUNT II
"The Grand Jury of said County further charges that before the finding of this indictment Ira Joe Harris Jr. and Adam Dwayne Lucas, whose names are to the Grand Jury otherwise unknown, did, in the course of committing a theft of a mixed quantity of money in lawful currency of the United States of America, the property of Villarreal Pizza, Incorporated, a corporation doing business as Domino's Pizza, of a total aggregate value of $31.00, a further and better description of which is to the Grand Jury otherwise unknown, threaten the imminent use of force against the person of Diana Horsewood, with the intent to compel acquiescence to the taking of or escaping with the property, while the said defendants were armed with a deadly weapon, or dangerous instrument, to-wit; a pistol, in violation of section 13A-8-41 of the Code of Alabama, against the peace and dignity of the State of Alabama."
(C. 53.)
A jury found Lucas guilty of both counts of first-degree robbery charged in the indictment. The trial court imposed a 20-year sentence for each conviction, to run concurrently, and applied an enhancement pursuant to the following provision of § 13A-5-6, Ala.Code 1975:
"(a) Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations:

*389 ". . . .
"(4) For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, or a Class A felony criminal sex offense involving a child as defined in Section 15-20-21(5), not less than 20 years."
The evidence presented at trial tended to show that Lucas and Harris together robbed pizza-delivery drivers on two occasions in Morgan County. Daniel DeQuesada testified that on January 1, 2007, while he was returning to his vehicle after he had delivered a pizza to occupants of a hotel room one evening, he was confronted by a black man wearing a hooded jacket, a black shirt, blue jeans, and a ski mask that covered most of his face. DeQuesada testified that the man pointed a gun at him and ordered him to surrender the money he had.
"Q. [Prosecutor:] Okay. Was he armed with anything or have anything with him?
"A. [DeQuesada:] Yeah. He approached me. He got pretty close to me about maybe a foot away and he had a gun.
"Q. What did he do with the gun?
"A. He just pointed it at me, and he told me to give me all hisor give him all of my money.
"Q. Did you do that?
"A. Yes, sir.
"Q. Why did you give him your money?
"A. Well, because he had a gun pointed at me."
(R. 181-82.)
On cross-examination, when asked specifically about the weapon used, DeQuesada testified:
"Q. [Defense counsel:] And as far as the gun that you saw, you don't know if it was a real gun or toy gun or what, do you?
"A. [DeQuesada] I don't know that much about guns to tell."
(R. 185.)
DeQuesada could not identify the robber, and he testified that Lucas was taller than the man who had robbed him.
Diana Horsewood testified that she also delivered pizzas and that she was robbed at gunpoint on January 2, 2007, after she had completed a delivery.
"Q. [Prosecutor:] So tell us about what happened on January, 2007.
"A. [Horsewood:] ... I went on up and made my delivery. And when I was coming back down the stairs somebody was coming up. So I got over to the right so he could pass me. When I moved to the right he moved to the right too, and then I looked down and he had a gun pointed at me and told me to give him all the money that I had."
(R. 189.)
She further described the appearance of the robber saying he was a black man wearing a hooded jacket and a ski mask.
"Q. When the person confronted you on the steps, tell us about how that person looked.
"A. He had a ski mask on, wearing a jacket. If I remember right he had a hood on, but he definitely had a dark ski mask and a gun low down here like this and pointed up at me. That was really all I saw.
"Q. The gun?
"A. The gun.
"Q. Tell us about the gun, what you remember about it.

*390 "A. It looked like a gun. I thought he was going to shoot me."
(R. 191-92.)
The prosecutor questioned Horsewood about the gun the robber had brandished:
"Q. Do you know anything about guns? "A. Not too much.
"Q. Did it look like a real gun to you?
"A. It looked real. I had no reason to think otherwise."
(R. 194.)
On cross-examination Horsewood stated:
"Q. [Defense counsel:] And he didn't threaten you, say I'm going to shoot you or anything?
"A. [Horsewood:] I saw that gun pointed at me and that's enough of a threat."
". . . .
"Q. You don't know if that was a real gun or toy gun or what, do you?
"A. It looked real to me.
"Q. It was real to you, but you don't know for sure what it was or not?
"Q. No."
(R. 195-96.)
Horsewood was not able to identify the robber. She indicated that the robber was in a large, light brown sport-utility vehicle ("SUV"), and DeQuesada testified that he saw a gold SUV near the location where he was robbed.
Decatur police officer David Shutt testified that on January 3, 2007, Lucas reported that his vehicle, a pewter-colored SUV, had been stolen. By the time Lucas made the report to the police, the vehicle had been recovered in Franklin County when suspects in a home invasion fled from law enforcement officers in the vehicle and then abandoned it during the pursuit.
Investigator Lt. Greg Pinkard with the Franklin County Sheriff's Department testified that an elderly couple had been assaulted and robbed in their home during the evening of January 2, 2007, and that deputies pursued the SUV that was reportedly involved in that crime. The driver of the SUV and the passenger abandoned the vehicle and fled into the woods; the sheriff's department recovered the vehicle but did not locate the suspects at that time. A check of motor-vehicle records revealed that the SUV belonged to Lucas. After further investigation a warrant was obtained for Lucas's arrest. He was arrested in Morgan County and was taken to the Decatur police department where he was interviewed.
Lucas admitted to Lt. Pinkard that he and Harris had robbed two pizza-delivery drivers.
"Adam Lucas stated a couple of days ago Snow and I were riding around and got the idea of taking my little boy's plastic gun and following the pizza man and taking the money. I drove my Suburban [SUV] and Snow got out and took their money. Snow got out both times with the plastic pistol. Both times we got about $60 to $70 cash (both times).
"When the cops got behind us I threw the stuff out the window. After that we ran and found our way back to Decatur. I first asked for an attorney during the interview, and when Lieutenant Pinkard started to leave I asked him to stay, that I wanted to tell the truth and didn't want an attorney."
(R. 231-32.)
Lt. Pinkard testified that Harris also admitted his involvement in the robberies of the pizza-delivery drivers. However, Harris told the investigator that he drove the SUV and that Lucas committed the robberies. DeQuesada and Horsewood viewed a photograph of Lucas's SUV, and both stated that it looked like the vehicle they saw when they were robbed.
*391 Sgt. Rick Archer of the Decatur police department participated in the investigation of the robberies of the pizza-delivery drivers. After noting that Lucas's statement was initialed but not signed, he asked Lucas if the statement was accurate and obtained Lucas's signature. When asked on cross-examination whether the gun was a toy or not, Sgt. Archer testified that he did not believe that the gun was a toy. Sgt. Archer testified, "I don't believe the firearm is a toy. I don't believe it was a toy gun." (R. 274.)
Without stating where or how they were obtained, Sgt. Archer said that the police had obtained parts of the gun they believed Lucas and Harris had used in the robberies.
"Q. [Defense counsel:] Now, are you familiar with both of the statements as far as Ira Harris and [Lucas's] statement, both of them said it was a plastic toy gun, didn't they?
"A. [Sgt. Archer:] I would have to look at the specifics of Ira's statement, but I believe he did refer to the gun as a toy. I don't know if he said it was plastic or what, but I think he referred to it as a toy.
"Q. As a toy?
"A. I believe.
"Q. Now, Mr. Harris did give a statement and he confessed, didn't he?
"A. That's correct.
"Q. Mr. Harris pleaded guilty in here yesterday, didn't he?
"A. He did.
"Q. To these two robberies?
"A. He did.
"Q. Do you have the gun?
"A. I have parts of what we believe was what they used, was the firearm they used.
"Q. And are those parts plastic?
"A. We processed those. I have photographs of them. I can't tell you based on the photographs.
"Q. Do they appear to be plastic?
"A. They appear to be metal.
"Q. I'm sorry, what?
"A. They appear to be metal.
"Q. But you're just basing that on where you've seen them?
"A. The pictures I've seen, yes."
(R. 284-86.)
On redirect examination, Sgt. Archer explained his reasoning:
"Q. [Prosecutor:] Anything else about the gun appear to be plastic or toy or real from what you've seen?
"A. [Sgt. Archer:] It appeared to be a real gun to me.
"Q. What about it appeared to be a real gun?
"A. There's a stamp on it, the Walther stamp. Walther is a type of firearm, and the Walther stamp is on the slide of the frame of this firearm, and that's the same stamp that Walther puts on all of their handguns. It's a very signature stamp for Walther. The firearm looks real and it's made to look real, and certainly the victims believed it was real."
(R. 286.)
Sgt. Archer acknowledged that a stamp can be placed on a toy gun so that it appears to be a real gun.
"Q. [Defense counsel:] Officer, a toy gun can have a stamp on it to be made to look like a real gun?
"A. [Sgt. Archer:] Certainly it could.
"Q. How big are these pieces that you're talking about: an inch, two inches?

*392 "A. No, they're actual size. They would be the actual size of a firearm. Again, I can't tell you that it was a toy. It looks to be a firearm.
"Q. But you don't know and there's been no tests come back?
"A. No, ma'am."
(R. 287.)
Lucas moved for a judgment of acquittal specifically citing the lack of proof of a deadly weapon.
"Judge, I would fill [sic] a motion for judgment of acquittal in the case that the Statethat the evidence presented is insufficient to support a finding of guilt beyond a reasonable doubt.
"There's no proof that this was a deadly weapon."
(R. 289.)
Lucas rested without presenting any testimony.
No charge conference appears in the record. The court charged the jury on robbery in the first degree as set out in the indictment. Ala.Code 1975, § 13A-8-41, defining robbery in the first degree, provides, in pertinent part:
"(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
"(1) Is armed with a deadly weapon or dangerous instrument; or
". . . .
"(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed."
Section 13A-8-43, Ala.Code 1975, defining robbery in the third degree, provides, in pertinent part:
"(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
"(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
The court charged the jury on the elements of robbery in the first degree including the requirement that the jury find that the defendant was "armed with a deadly weapon or dangerous instrument" before it could return a verdict of guilty. Included in the court's oral charge was an explanation of the rebuttable presumption found in § 13A-8-41(b). Lucas made no request for a charge on robbery in the second degree. The verdict forms for each count allowed a choice only between finding Lucas guilty of robbery in the first degree or finding him not guilty. Lucas did not object to the court's oral charge. Had Lucas requested a charge on the lesser-included offense of robbery in the second degree, he would have been entitled to it.
"While we think that the presumption in § 13A-8-41(b) can be rebutted (such as by evidence that the gun was obviously a toy), we think that the Court of Criminal Appeals erred in holding that evidence that the gun was unloaded can rebut the presumption that it was a `deadly weapon or dangerous instrument.' This Court holds that an unloaded gun qualifies as a deadly weapon or dangerous instrument under § 13A-8-41(b), because *393 that statute's concern is with whether any person present is led `reasonably to believe it to be a deadly weapon or dangerous instrument.'
". . . .
"We hold that the better rule is that an unloaded gun is a `deadly weapon' for the purposes of § 13A-8-41, and that when the evidence shows, as it does in this case, that the defendant was `armed' with a pistol at the time of the robbery, the showing that it was, in fact, not loaded, is not an affirmative defense, nor is it evidence that will entitle the defendant to a lesser included offense instruction."
Herndon v. State, 563 So.2d 1065, 1070-71 (Ala.1990) (emphasis in original).
At Lucas's sentencing hearing, Moulton police chief Lyndon McWhorter identified pieces of a plastic gun that had been recovered from the vehicle of a victim of a robbery during an attempted carjacking unrelated to the present charges. Moulton is located in Lawrence County. Chief McWhorter identified the pieces as plastic, with some metal parts in the magazine. No ammunition was recovered, he said. Chief McWhorter testified that, in his opinion, the gun was not a real firearm. (R. 351-52.)
Lucas identified the pieces of the gun and said that they were from his two-year-old son's toy gun. His testimony and the evidence adduced during the trial of the substance of his codefendant's statement was the only evidence indicating that the toy found in Lawrence County was used in the Morgan County robberies.
The trial court made a finding of fact that the gun was a plastic toy gun:
"I'll make a finding that it's a plastic toy gun. I don't think there's any dispute that [interruption by counsel] that
"I'll make that finding regardless of what the analysis would or would not show. I'm enough [interruption by counsel] satisfied that that's a plastic toy gun; however, I am convinced that the law is that it could be a loaded gun or an unloaded gun or it could be a facsimile or plastic or toy gun. But the standard is that it is a deadly weapon under the terms of the definition of the statute if it would lead any person present to reasonably believe it to be a deadly weapon or a dangerous instrument.
"I think the testimony there is uncontroverted that regardless whether it was a toy or cocked and loaded pistol, the person there believed it to be a deadly weapon or dangerous instrument. They believed it to be a toynot a toy but a real pistol.
"I looked at it closely and from standing, and we're eight feet apart at the most, I couldn't tell if it was toy or real. That barrel looked very real, and the slide on top looked very real, and I've seen hundreds of handguns."
(R. 358-59.)
When the trial court imposed the 20-year sentence, it stated that even though Lucas and Harris were using a toy gun, "it appeared from anybody looking at it to be a real gun, which makes it a deadly weapon under our statute. Therefore, it's a 20 year minimum." (R. 369.)
Lucas argues that the trial court erred when it applied § 13A-5-6(a)(4), Ala.Code 1975, which provides for enhanced sentences for crimes in which a firearm or a deadly weapon is used or attempted to be used in the commission of a felony. Lucas argues that the firearm enhancement was improper and resulted in illegal sentences because a toy gun was used and not a firearm or a deadly weapon. Lucas relies on Snowden v. State, 842 So.2d 24 (Ala. Crim.App.2002), and Sanders v. State, 947 *394 So.2d 432 (Ala.Crim.App.2006), in support of his claim.
The jury found, on the basis of conflicting evidence, that Lucas or his codefendant was armed with a deadly weapon or a dangerous instrument. It was undisputed that in each robbery he or his codefendant used an "article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument," § 13A-8-41(b), Ala.Code 1975. The only evidence presented to the jury that the article was not a firearm was his confession and testimony concerning the confession of his codefendant. Under the instructions given to the jury in this case, before it could find Lucas guilty of robbery in the first degree, the jury was required to find beyond a reasonable doubt that he was armed with a deadly weapon or dangerous instrument. If the jury had found that the presumption that he was so armed, which is set out in § 13A-8-41(b), had been rebutted, it would have been required to find him not guilty under the instructions given in the court's oral charge. The jury did not acquit, so as a matter of law, Lucas was found guilty of being armed with a deadly weapon or dangerous instrument. Lucas could have requested a charge to the jury on the lesser-included offense of robbery in the second degree and could have argued to the jury that the presumption had been rebutted; however, he did not do so. The only choice the jury was left with was that he was either guilty of robbery in the first degree or not guilty of any offense.
The function of the rebuttable presumption is explained in James v. State, 405 So.2d 71 (Ala.Crim.App.1981).
"The relevant portions of Section 13A-8-41, Alabama Code 1975 (Amended 1977), defining robbery in the first degree, provide:
"`(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
"`(1) Is armed with a deadly weapon or dangerous instrument;
* * * * * *
"`(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.'
"The comments to Section 13A-8-44 are helpful in deciding the issue under review.
"`A difficult area is robbery by use of an unloaded, inoperable or dummy weapon. The basic theory of this article is to protect the citizen from fear for his or another's health and safety. This should be aggravated only when there is actual serious physical injury inflicted or when the robber possesses an instrument which is readily capable of inflicting such injuries. However, it is sometimes difficult to prove that defendant actually was armed with a dangerous weapon, unless he is apprehended at the scene. In an effort to balance the needs for enforcement with the demands for appropriate penalties, Section 13A-8-41 makes possession of an object reasonably believed to be a "deadly weapon" or "dangerous instrument", as defined in Section 13A-1-2, or a representation by the defendant that he has one, prima facie evidence that he is armed. If in fact the defendant refutes this, he may still be convicted of robbery in a lesser degree.'

*395 "A conviction of first degree robbery does not require evidence that the accused brandished or displayed any weapon. Indeed, in order to be convicted of first degree robbery an accused need not even be armed with a deadly weapon or dangerous instrument where (1) he possesses any object reasonably believed to be a deadly weapon or dangerous instrument or represents in some manner that he has one and (2) there is no evidence to rebut or refute this reasonable belief or representation. To find as a matter of law that where a gun is not seen a defendant cannot be convicted of first degree robbery would allow all would-be robbers to keep a gun or other dangerous weapon concealed during the crime to be used only if needed. State v. Cooper, 140 N.J.Super. 28, 354 A.2d 713 (1976). Under our statute, such an interpretation would defeat the intent of the legislature and `basic theory' of the statute to `protect the citizen from fear for his or another's health and safety.'
"Here the defendant's actions instilled in the victim the reasonable belief that he was armed with a pistol. Under Section 13A-8-41(b) this constituted prima facie evidence1 that the defendant was so armed. Since there was no evidence to rebut this presumption and as the State proved all the other elements of robbery in the first degree, the defendant's conviction must stand.
1 "`Prima facie evidence. Evidence good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient. Prima facie evidence is evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence.'
"Black's Law Dictionary, 1071 (5th ed.1979)." 405 So.2d at 73.
The law established by previous cases regarding the quantum of proof to sustain a conviction for robbery in the first degree under § 13A-8-41(a)(1), Ala.Code 1975, is not a model of clarity. It is important to distinguish cases in which the court explains the type of evidence needed to prove use of force from those in which the court is discussing the use of a deadly weapon or dangerous instrument as an element of robbery in the first degree. At times, previously decided cases have not adequately explained the function of the rebuttable presumption in § 13A-8-41(b).
For example, in Dick v. State, 677 So.2d 1267 (Ala.Crim.App.1996), a case in which it was undisputed that the appellant was armed with a .357 pistol during the robbery and displayed it to the victim, in explaining that threatening the use of a deadly weapon is sufficient proof of the use of force to prove that element under Ala. Code 1975, § 13A-8-43, the court stated:
"`This court has held on several occasions that it is not necessary to prove that a defendant displayed a gun during a robbery or that he actually had a gun to sustain a conviction for Robbery in the First Degree. Miller v. State, 431 So.2d 586 (Ala.Cr.App.1983); Bender v. State, 420 So.2d 843 (Ala.Cr.App.1982); James v. State, 405 So.2d 71 (Ala.Cr. App.1981). In James v. State, supra, the court stated, "Indeed, in order to be convicted of first degree robbery an accused need not even be armed with a deadly weapon or dangerous instrument where (1) he possesses any object reasonably believed to be a deadly weapon *396 or dangerous instrument or represents in some manner that he has one and (2) there is no evidence to rebut or refute this reasonable belief or representation." James v. State, supra, at 73.'"
677 So.2d at 1270 (Ala.Crim.App.1996) (quoting Stewart v. State, 443 So.2d 1362, 1363-64 (Ala.Crim.App.1984)).
This statement correctly explains that a representation by the offender to the victim that he is armed is sufficient to establish that force was used and satisfies the requirement that the State prove the use of force pursuant to § 13A-8-43, but in some cases it has been the foundation of erroneous statements of law regarding proof of prima facie evidence of the use of a deadly weapon pursuant to § 13A-8-41 (b). One example is found in Holt v. State, 960 So.2d 726 (Ala.Crim.App.2006), in which the following language appears in a footnote:
"At the hearing, Holt argued that the robbery conviction was based on his walking into a convenience store and giving the clerk a note that stated: `"[T]his is a robbery, don't make it a murder."'; that Holt caused no serious physical injury to the clerk; and that Holt was not armed at the time. Robbery in the first degree requires that the accused either use force or threaten the imminent use of force, see § 13A-8-43, Ala.Code 1975, and that the accused either `cause[ ] serious physical injury to another,' § 13A-8-41 (a)(2), or be `armed with a deadly weapon or dangerous instrument,' § 13A-8-41 (a)(1). Section 13A-8-41 (b), however, provides that `any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.' Thus, an accused need not actually be armed with a deadly weapon to be convicted of robbery in the first degree under § 13A-8-41 (a)(1); he need only represent that he is so armed. See, e.g., Dick v. State, 677 So.2d 1267 (Ala.Crim.App.1996)."
960 So.2d at 739 n. 6 (emphasis supplied).
The above-emphasized statement is not correct; it is an incomplete statement of the effect of the presumption and is founded upon an erroneous reading of § 13A-8-41 in Dick v. State, supra. It is more correct to say that § 13A-8-41(b) allows a presumption to arise, i.e., it constitutes prima facie evidence that the offender was armed, and unless the presumption rebutted, a jury would be authorized to find the defendant guilty of robbery in the first degree. Compare the correct statement of law in Matthews v. State, 671 So.2d 146 (Ala.Crim.App.1995):
"The appellant contends that the state's evidence is insufficient because, he says, Sample did not actually see the weapon used by the appellant, and because a knife or other weapon was never recovered. Nevertheless, the testimony of Sample, Smith, and Watkins constituted legal evidence from which the jury could have concluded that the appellant was armed with a deadly weapon during the course of the robbery. Furthermore, the appellant's threat to cut Sample's throat was prima facie evidence that the appellant had the present ability to carry out his threat. § 13A-8-41(b)."
671 So.2d at 147, with the incorrect statement in Porter v. State, 666 So.2d 106 (Ala.Crim.App.1995):
"The appellant also contends that the state failed to prove that he was armed or that he appeared to be armed. Section 13A-8-41, Code of Alabama 1975, which defines robbery in the first degree, states:
"`(b) Possession then and there of an article used or fashioned in a manner *397 to lead any person who is present reasonably to believe it to be [a] deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.'
"The appellant contends that the state did not prove this element because Hyde never specifically stated that she saw a gun and because a gun was never recovered. He contends that she assumed he had a gun because she stated she felt something hard being pushed into her rib cage and because she developed a round bruise in that spot. Also, in the appellant's statement to the police he maintained that he was not armed.
"`In a prosecution for first degree robbery, the robbery victim does not actually have to see a weapon to establish the element of force; his or her reasonable belief that the robber is armed is sufficient. Dinkins v. State, 584 So.2d 932 (Ala.Cr.App. 1991); Breedlove v. State, 482 So.2d 1277 (Ala.Cr.App.1985). The test to determine whether a person reasonably believes that an object is a deadly weapon is a "subjective" one. James v. State, 549 So.2d 562 (Ala.Cr.App. 1989). "It focuses on the `reaction of the victim to the threats of the robber.' State v. Hopson, 122 Wis.2d 395, 362 N.W.2d 166, 169 (1984)." 482 So.2d at 1281.'
"Rice v. State, 620 So.2d 140, 141-2 (Ala. Cr.App.1993)."
"Hyde's testimony presented sufficient evidence from which the jury could find that she had a subjectively reasonable belief that the appellant was armed, even though conflicting evidence was also presented. Any inconsistencies and conflicts in the evidence are for the jury to resolve. O'Barr v. State, 639 So.2d 533, 536 (Ala.Cr.App.1993). This court is not a finder of fact and will not second-guess juries in their conclusions as to the facts of a case. O'Barr, 639 So.2d at 536. We will not substitute our judgment for that of the jury. Owens v. State, 597 So.2d 734, 737 (Ala.Cr.App. 1992)
666 So.2d at 108.
To like effect is Breedlove v. State, 482 So.2d 1277, 1281 (Ala.Crim.App.1985), which cites that portion of Goodwin v. State, 641 So.2d 1289 (Ala.Crim.App. 1994), discussing a subjective test for determining if force was used as authority for using the rebuttable presumption of § 13A-8-41 (b).
This court has previously held that the jury verdict establishing that a defendant was armed with a deadly weapon was conclusive, albeit in the context of addressing whether a codefendant who was not armed with a deadly weapon should receive an enhanced sentence when his accomplice was so armed.
"The appellant further asserts that the trial court erred in enhancing his sentence pursuant to § 13A-5-6, Code of Alabama 1975, which provides enhanced sentences if a firearm or deadly weapon is used in the commission of a felony. Specifically, the appellant argues that the enhancement statute was improperly applied because, he says, he did not possess a deadly weapon during the commission of the crime. This argument is without merit.
"The State, in its brief to this Court, accurately notes that this Court addressed this precise issue in Hammond v. State, 497 So.2d 558 (Ala.Crim.App. 1986). In Hammond, we held that even if the defendant was actually unarmed, the jury's verdict encompassed in it a finding that the defendant was armed *398 with a deadly weapon and the trial court was required to sentence the defendant in accordance with the enhancement statute. Id. at 566. Hammond is applicable to this case. Therefore, we affirm the sentence that the trial court imposed upon the appellant."
Miller v. State, 650 So.2d 940, 945 (Ala. Crim.App.1993), rev'd on other grounds, 650 So.2d 947 (Ala.1994).
With these principles in mind, the effect of Sanders v. State, 947 So.2d 432 (Ala. Crim.App.2006), must be analyzed. In Sanders, the undisputed evidence was that Sanders robbed the Texaco Food Mart by placing his hand under his shirt with his index finger sticking out to appear to be the barrel of a gun and threatening to kill the clerk. It was undisputed that the clerk could clearly see that Sanders was using his finger to simulate a gun. Sanders's counsel on appeal apparently believed that an oral threat was sufficient proof of robbery in the first degree, even when the undisputed evidence established that he was not armed. In his brief, Sanders stated that he
"acknowledges that, based on the evidence presented, the jury could find him guilty of first degree robbery based on the verbal threat articulated to the convenience store clerk."
(Sanders' brief on appeal at p. 9.)[1]
Thus, in Sanders, this court was not presented with an argument that the evidence was insufficient to warrant a finding by the jury that Sanders was guilty of robbery in the first degree. This court stated:
"The single issue presented for review is whether the trial court abused its discretion in applying the firearm-enhancement statute to the sentence for Sanders' first-degree-robbery conviction. Sanders argues that there was no evidence presented indicating that any firearm was seen in the his possession or used by him at the time the robbery was committed."
Sanders v. State, 947 So.2d 432, 433 (Ala. Crim.App.2006).
The undisputed evidence was that no firearm or deadly weapon was used or attempted to be used in the commission of the robbery, because Sanders was never armed with a firearm or a deadly weapon. Based on the single issue presented, this court remanded the case to the trial court for resentencing without the use of the enhancement because it was undisputed that he did not use or attempt to use a deadly weapon.
In Snowden v. State, 842 So.2d 24, 25-26 (Ala.Crim.App.2002), this court, in an appeal from the denial of a petition for postconviction relief filed pursuant to Rule 32, Ala. R.Crim. P., challenging a plea of guilty and sentence enhanced pursuant to § 13A-5-6(a)(4), Ala.Code 1975, held that a claim by the petitioner that during the robbery he merely stated he was armed but in fact was not armed with a deadly weapon required a remand to the trial court for specific findings of fact.
"The appellant's argument may be meritorious. The firearm enhancement set forth in § 13A-5-6(a)(4), Ala.Code 1975, applies only in those cases `in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony.' In this case, based on statements it made during the guilty plea proceedings, it appears that the trial court mistakenly believed that *399 the firearm enhancement could be applied even in cases in which the defendant only represented that he was armed with a firearm. However, such an interpretation is contrary to the plain language of § 13A-5-6(a)(4), Ala.Code 1975. During the Rule 32 proceedings, the State did not specifically refute, and the circuit court did not address, the appellant's contention. Therefore, we remand this case to the circuit court with instructions that that court make specific, written findings of fact as to the appellant's contention."
842 So.2d at 25.
This court in Snowden v. State apparently was not presented with, and did not discuss, whether the defendant's conviction for robbery in the first degree was supported by the factual basis articulated during his guilty plea to robbery in the first degree under § 13A-8-41(a)(1). There was no discussion of the necessity of showing that Snowden was armed with a deadly weapon. Without such a showing when the court heard the factual basis for the plea, either supplied by the prima facie evidence authorized by § 13A-8-41(b) or by facts showing he was armed with a deadly weapon, the trial court would not have been authorized to enter a judgment of conviction to robbery in the first degree under § 13A-8-41(a)(1), Ala.Code 1975.
To be convicted of robbery in the first degree pursuant to § 13A-8-41(a)(1) the offender must have been armed with a deadly weapon. To apply the enhancement pursuant to § 13A-5-6(a)(4), Ala. Code 1975, the offender must have used a deadly weapon. There may be rare cases where the offender possesses a deadly weapon, for example he has a knife in his pocket that cannot be discerned by looking at him, while he commits a robbery without representing that he is armed or otherwise referring to a deadly weapon, then is arrested at the scene immediately after the crime, whereupon the weapon is discovered. In that case he would be armed with, but would not have used, the deadly weapon.
In Snowden v. State, this court remanded the case for a determination of whether the defendant had used a deadly weapon; this court could not, in the posture in which that case was presented, remand the case for a determination of whether the factual basis for the plea adequately supported a conviction for robbery in the first degree. Snowden is similar to Sanders. In each case, it was undisputed that the defendant was never armed with a deadly weapon. Each case is an illustration of the adage that "hard facts make bad law."
During Lucas's trial, whether he or his codefendant was armed with a firearm or a toy was disputed. The jury determined that Lucas or his codefendant had been armed with a deadly weapon. Unlike the evidence in Sanders v. State, where it was undisputed that Sanders used his finger to simulate a gun and was not armed with a deadly weapon and therefore could not have used or attempted to use a deadly weapon to commit the robbery, or the evidence accepted as possibly true in Snowden v. State that Snowden merely represented that he was armed with a deadly weapon, but was in fact not so armed, in the instant case the evidence presented to the jury regarding whether Lucas or his codefendant was armed with a deadly weapon was disputed. The jury found that he was armed with a deadly weapon. It was undisputed that Lucas used the article found by the jury to have been a deadly weapon to commit the robbery.
Lucas argues that since the judge found at the sentencing hearing that the article used was a toy, it was error for the judge to enhance his sentence pursuant to *400 § 13A-5-6(4), Ala.Code 1975. It is true that the judge seems to have applied the incorrect reasoning found in cases such as Holt v. State, 960 So.2d 726 (Ala.Crim.App. 2006), Porter v. State, 666 So.2d 106, (Ala. Crim.App.1995), and Breedlove v. State, 482 So.2d 1277, 1281 (Ala.Crim.App.1985), when he stated:
"But the standard is that it is a deadly weapon under the terms of the definition of the statute if it would lead any person present to reasonably believe it to be a deadly weapon or a dangerous instrument.
"I think the testimony there is uncontroverted that regardless whether it was a toy or cocked and loaded pistol, the person there believed it to be a deadly weapon or dangerous instrument. They believed it to be a toynot a toy but a real pistol."
(R. 358.)
But, because the jury found Lucas guilty of robbery in the first degree pursuant to § 13A-8-41(a)(1) and implicit in that verdict was a finding that he or his codefendant had been indeed armed with a deadly weapon, had the judge refused to apply the enhancement, he would have imposed an illegal sentence.
"However, our examination of the record reveals that the trial court improperly sentenced the appellant to serve a term of 13 years in prison. The appellant was indicted for first-degree robbery while armed with a deadly weapon, and the jury found him guilty as charged in the indictment. First-degree robbery is a Class A felony. See § 13A-8-41(c), Ala.Code 1975. In addition, § 13A-5-6(a)(4), Ala.Code 1975, provides that, when a firearm is used in the commission of a Class A felony, the minimum sentence is 20 years in prison. The appellant's 13-year sentence falls below this mandatory minimum. Accordingly, we remand this case to the trial court with instructions that that court resentence the appellant in accordance with § 13A-5-6 (a)(4), Ala.Code 1975."
Washington v. State, 816 So.2d 1078, 1078-79 (Ala.Crim.App.2001). Accord, Moore v. State, 677 So.2d 819 (Ala.Crim.App.1996).
"While we affirm the appellant's conviction, we must nevertheless remand this cause to the trial court because a review of the record reveals that the appellant's sentence of 10 years' imprisonment is not in compliance with the law. See, Scott v. State, 627 So.2d 1133 (Ala.Crim.App.1993) (wherein this Court took notice that the trial court incorrectly ordered that the defendant's enhanced sentences were to run concurrently, and this Court remanded the cause to the trial court with instructions that the trial court resentence the appellant in accordance with the law). See also, Hoppins v. State, 451 So.2d 365, 365 (Ala.1983) (wherein the Alabama Supreme Court stated that `[i]n approving Rule 45B [Ala.R.App. P.], this Court did not intend to restrict the authority of the Court of Criminal Appeals to consider obvious errors'1).
"As noted, the appellant was convicted of burglary in the first degree. Burglary in the first degree is a Class A felony. 13A-7-5(b), Code of Alabama 1975. Section 13A-5-6, Code of Alabama 1975, provides, in relevant part:
"`(a) Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations:
"`(1) For a Class A felony, for life or not more than 99 years or less than 10 years.
"`. . . .

*401 "`(4) For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 20 "years.'
"(Emphasis added.)
"In Hammond v. State, 497 So.2d 558 (Ala.Crim.App.1986), this Court addressed a contention by a defendant that because the evidence did not establish that he actually possessed the deadly weapon during the commission of the robbery for which he was convicted, his sentence had been illegally enhanced pursuant to § 13A-5-6(a)(4), Code of Alabama 1975. In rejecting this contention, we held:
"`[E]ven if Hammond was actually unarmed, we find his contention to be without merit. By virtue of the jury's verdict, which encompasses its finding that Hammond was armed with a deadly weapon, the trial court had no alternative but to sentence Hammond in accordance with § 13A-5-6(a)(4). Holloway v. State, 477 So.2d 487 (Ala. Crim.App.1985). This holds true regardless of whether the jury based its verdict on complicity, embraced in § 13A-2-23(2). "It is well established that a person present, aiding and abetting another in the commission of [a crime], is guilty as a principal and punishable equally with the perpetrator of the crime." Biggs v. State, 331 So.2d 763, 764 (Ala.Cr.App.) cert, denied, 331 So.2d 765 (Ala.Cr.App.1976) (emphasis added [in Hammond]).
"`Furthermore, if we accepted Hammond's contention, we would be giving the trial court discretion exceeding that conferred by statute. In Mitchell v. State, 450 So.2d 181 (Ala. Cr.App.1984), the court, in rejecting the argument that the trial court should be able to consider any mitigating circumstances, observed that the language of § 13A-5-6(a)(4) is clear and its meaning is plain. See also Rocker v. State, 443 So.2d 1316 (Ala.Cr.App.1983). In the instant case, we likewise reject the contention that the trial court should be able to consider as a mitigating circumstance Hammond's degree of participation in the offense; the statute simply does not differentiate between principals and accessories. For an example of a statute which limits imposition of a mandatory minimum sentence for possession of a firearm during commission of robbery to the defendant having actual, not vicarious, possession of the firearm, see Fla. Stat. § 775.087 (1976).'
"497 So.2d at 566 (emphasis original.) See also Miller v. State, 650 So.2d 940 (Ala.Crim.App. 1993), rev'd on other grounds, 650 So.2d 947 (Ala.1994) (wherein this Court found that the defendant's sentence was properly enhanced pursuant to § 13A-5-6 even though the defendant's accomplice actually possessed the deadly weapon during the commission of the robbery.)
"In the instant case, the fact that there was evidence at trial that the appellant's accomplice, rather than the appellant, was in actual possession of the shotgun during the burglary does not remove the appellant from the application of § 13A-5-6(a)(4), Code of Alabama 1975. The jury found the appellant guilty of burglary in the first degree; therefore, by `virtue of the jury's verdict,' Hammond, 497 So.2d at 566, the trial court was required to enhance the appellant's sentence pursuant to § 13A-5-6(a)(4), making the minimum sentence 20 years....

*402 "1 Rule 45B, Ala. R.App. P., reads: In those criminal cases in which the death penalty has not been imposed, the Court of Criminal Appeals shall not be obligated to consider questions or issues not presented in briefs on appeal."
Moore, 677 So.2d at 820-22 (emphasis in last paragraph supplied).
Therefore, the trial court reached the correct result, albeit for an incorrect reason, and its judgment should be affirmed.
"`Nonetheless, this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala. 2000), citing Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala. 1988)....'"
A.G. v. State, 989 So.2d 1167, 1180 (Ala. Crim.App.2007) (quoting Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003)).
Based on the foregoing, I respectfully dissent.
NOTES
[*] Note from the reporter of decisions: On March 12, 2010, on return to remand, the Court of Criminal Appeals affirmed, without opinion.
[1] This court may take judicial notice of its own records. See Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App.1992).