STATE of Wisconsin, Plaintiff-Respondent,

v.

Aaron HOPSON, Defendant-Appellant.†

Court of Appeals

*No. 84–739–CR. Submitted on briefs November 7, 1984.—
Decided December 10, 1984.*
(Also reported in 362 N.W.2d 166.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Van Skike & Huppertz,* with *Russell K. Van Skike* of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *James P. Altman,* assistant attorney general of counsel, of Madison.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

WEDEMEYER, P.J.    Aaron Hopson appeals from a conviction of armed robbery, contrary to sec. 943.32 (1)

(b) and (2), Stats.[1] He argues that the state was required to show that he produced and displayed to the victim either a dangerous weapon or an article which the victim could reasonably mistake for a dangerous weapon. He argues that the statement, "I have a gun," is insufficient to support a conviction of armed robbery. We hold that Hopson's actions in stating he was armed and reaching under his shirt toward his waistband, where there were several bulges, fall within the statutory language "threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon." We therefore affirm the conviction.

Hopson was arrested for the August 19, 1982 armed robbery of a grocery store. In a trial to the court, the store manager, Ronald Krahn, testified that he saw Hopson walking through the store with a grocery cart. Hopson had several items of lunch meat (a hard salami, a bologna, and two luncheon rolls) in the cart's baby seat. Hopson stopped in an aisle, looked back and forth, waited for the other customers to leave, and when no one was in sight, stuffed the lunch meat into the waistband of his trousers. Hopson then walked toward an exit.

Krahn stopped Hopson in front of the door and asked whether he had forgotten to pay for something. Hopson

---

[1] Section 943.32 (1) (b) and (2), Stats., provides:

(1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:

. . . .

(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

(2) Whoever violates sub. (1) by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon is guilty of a Class B felony.

put his hand under his shirt and said, "I got a gun. You better move." Krahn stepped aside and let Hopson leave. Krahn testified that he could not tell whether Hopson actually had a gun because the meat caused "a considerable bulge" under Hopson's shirt. He said he let Hopson go because he thought that if he did not, Hopson might pull out the gun and use it. The state presented no evidence that Hopson actually had a gun, or any other article excepting the lunch meat, in his possession. Hopson testified that he had never stolen any merchandise from the store. The trial court found Hopson guilty of armed robbery. Hopson appeals.

Hopson contends that to prove him guilty of armed robbery, the state must show he had some article in his possession with which he threatened the victim. Answering this question requires us to construe the armed robbery statute. Statutory construction presents a question of law, which we review independently on appeal. *White v. General Casualty Co.,* 118 Wis. 2d 433, 437, 348 N.W. 2d 614, 616 (Ct. App. 1984). The goal of statutory construction is to ascertain and give effect to the legislature's purpose. *Ball v. District No. 4, Area Board of Vocational, Technical & Adult Education,* 117 Wis. 2d 529, 537–38, 345 N.W.2d 389, 394 (1984). Our first recourse is to the language of the statute. *White,* 118 Wis. 2d at 437, 348 N.W.2d at 617. We may consider matters outside the statutory language only if the statute is ambiguous. *American Industrial Leasing Co. v. Geiger,* 118 Wis. 2d 140, 146, 345 N.W.2d 527, 530 (Ct. App. 1984).

A statute is ambiguous when it is capable of being interpreted by reasonably well-informed people in two or more different ways. *Id.* Section 943.32(2), Stats., can be interpreted to mean that a defendant commits armed robbery only if the defendant produces a dangerous

weapon or a dangerous-appearing article and threatens the victim with it. Alternatively, sec. 943.32(2) can be interpreted to mean the defendant can commit armed robbery merely by threatening to use a weapon he or she gives the victim reason to believe he or she possesses. We conclude that sec. 943.32(2) is ambiguous and that we may look to its history to aid our construction.

The version of sec. 943.32(2), Stats., which is now in effect was created by the Laws of 1979. The preceding version of sec. 943.32(2) provided: "Whoever violates sub. (1) while armed with a dangerous weapon is guilty of a Class B felony." The Wisconsin Supreme Court interpreted this to mean that the state was required to prove the defendant actually possessed a dangerous weapon at the time of the robbery.

In *Dickenson v. State,* 75 Wis. 2d 47, 248 N.W.2d 447 (1977), the court reversed an armed robbery conviction where the defendant had shown the victim something that looked like a gun and hinted to the victim that it was a gun, but the state failed to prove that the article was in fact a gun. The court stated: "In this state it is an element of the crime of armed robbery that the accused be, in fact, armed wth a dangerous weapon." *Id.* at 49, 248 N.W.2d at 448. The court noted that some states' statutes imposed the same penalty for robbery committed under the pretense of being armed as for robbery committed while armed. It stated: "There is much to recommend such a statute, because the victim is put in the same fear whether the weapon is real or feigned." *Id.* at 50, 248 N.W.2d at 449. It concluded, however, that that was a question for the legislature and that the victim's subjective reactions were not determinative of whether the defendant was actually armed with a deadly weapon.[2] *Id.* at 50–51, 248 N.W.2d at 449.

---

[2] *But see Beamon v. State,* 93 Wis. 2d 215, 286 N.W.2d 592 (1980), where the supreme court held that testimony by the victim

In *McKissick v. State,* 78 Wis. 2d 176, 254 N.W.2d 218 (1977), the defendant put his hand into his pocket and said he had a gun. There was a bulge in the pocket, but the state did not show that the defendant actually had a weapon. The court, relying on *Dickenson,* held that this was insufficient to support a conviction of armed robbery. It reversed the conviction and ordered that the defendant be resentenced for unarmed robbery.

In the legislative session which followed the *Dickenson* and *McKissick* decisions, the legislature repealed and recreated sec. 943.32(2), Stats. Ch. 114, Laws of 1979. It created a new definition of armed robbery which included robbery committed under the pretense of being armed. The drafting record of ch. 114, Laws of 1979, contains a memorandum from the Milwaukee County Deputy District Attorney which proposed the statutory language adopted in sec. 943.32(2). The memorandum states: "This amended statute would focus upon whether or not the victim reasonably believed that the robber was threatening him with a dangerous weapon." We find this persuasive evidence of the legislature's intent. We conclude that the recreated sub. (2) should be construed to focus upon the reasonable perception of the victim that he or she was in danger and not upon the defend-

---

that the defendant said a bottle contained nitroglycerin was sufficient to prove that the defendant was armed.

A similar approach is taken by several other jurisdictions. *See, e.g., James v. State,* 405 So. 2d 71 (Ala. Crim. App. 1981) (defendant's verbal or physical representation that he or she is armed is *prima facie* evidence of weapon); *State v. Elam,* 312 So. 2d 318 (La. 1975) (jury could find defendant armed where defendant put hand in pocket and threatened to shoot); *People v. Parker,* 339 N.W.2d 455 (Mich. 1983) (defendant's statement that he or she is armed is evidence of weapon); *State v. Sherman,* 335 N.E.2d 753 (Ohio Ct. App. 1973) (jury could find defendant armed where defendant covered hand with cloth and said he had a gun).

ant's possession or display of dangerous weapons or other dangerous-appearing articles.

This conclusion is supported by a comparison of sec. 943.32(2), Stats., with sec. 939.63, Stats., which was also created by ch. 114, Laws of 1979. Section 939.63 provides for an additional penalty when a person commits a crime "while possessing, using or threatening to use" a dangerous weapon. The legislature showed here that it knew how to prohibit crimes committed while possessing something. It did not use the word "possessing" in the recreated sec. 943.32(2), however. This is further indication that the legislature was more concerned with the reasonable belief of the victim than with whether the robber had something in his or her possession.

Our conclusion is further supported by a consideration of the language of sec. 943.32(2), Stats., in light of the supreme court's interpretation of sec. 943.32(1)(b).[3] Subsection (1)(b) prohibits robbery committed "[b]y threatening the imminent use of force." The supreme court held in *McKissick* that the defendant's statement that he had a gun in his possession "constituted a threat of the imminent use of force." 78 Wis. 2d at 180, 254 N.W.2d at 219. The statement also constituted a threat of the imminent use of a dangerous weapon, the use of the supposed gun being the specific type of force threatened.

The construction we place upon sec. 943.32(2), Stats., is similar to that adopted by courts of other jurisdictions construing similar statutes. *See, e.g., State v. Smallwood,* 346 A.2d 164 (Del. 1975) (defendant's hand in pocket pointed at victim is within statutory language "what appears to be a dangerous weapon"); People v. Jury, 142 N.W.2d 910 (Mich App 1966) (defendant's covered hand, pointed at victim, was within statutory language quoted in note 4, *infra*); *State v. Cooper,* 354 A.2d 713

---

[3] *See* note 1, *supra*.

(N.J. Super. Ct. Law Div. 1976), *rev'd on other grounds,* 397 A.2d 702 (N.J. Super. Ct. App. Div. 1979) (statutory language "object . . . having an appearance similar to" listed weapons covered defendant who put hand in pocket and said "this is a holdup") ; *People v. Knowles,* 436 N.Y.S.2d 25 (N.Y. App. Div. 1981) (defendant's hand in pocket is within statutory language "what appears to be . . . firearm") ; *State v. Henderson,* 664 P.2d 1291 (Wash. App. 1983) (defendant's hand in pocket holding ratchet tool with pistol grip handle is within statutory language "what appears to be firearm or other deadly weapon") ; *State v. Young,* 61 S.E.2d 734 (W. Va. 1950) (statutory language "by threat or presentation of fire-arms" covers defendant who put hand in pocket and ordered victim away from cash drawer). These deci-sions emphasized, as do we, that a victim who is threaten-ed with a supposed weapon which is concealed is put in the same degree of fear and feels as strongly compelled to comply with the robber's demands as a victim who is threatened with a weapon which is openly displayed.

Because this approach focuses on the reaction of the victim to the threats of the robber, it has been called the "subjective" view of armed robbery. It stands in con-trast to the "objective" view, which requires that the state prove the robber was actually armed with a danger-ous weapon. *See, e.g., People v. Skelton,* 414 N.E.2d 455 (Ill. 1980) (statutory language "in possession of danger-ous weapon" does not cover small, lightweight toy gun). This was the view of sec. 943.32(2), Stats., which the supreme court took in *Dickenson* and *McKissick.* The "objective" approach represents an attempt to deter per-sons from bringing a weapon into a volatile situation like a robbery and thereby subjecting the victims and passers-by to an additional increment of danger. *See* W. LaFave and A. Scott, *Handbook on Criminal Law* sec. 94, at 703 & n. 67 (1972).

The legislature rejected the "objective" approach, however, when it provided that armed robbery would include robbery by the use of an article which appeared to be dangerous but in fact was harmless. Further indication that the legislature rejected the "objective" view and adopted the "subjective" approach is its elimination of the possibility of conviction where the robber merely possesses a weapon, and its concomitant substitution of the requirement that the robber use or threaten to use the weapon. *See State v. Moriarty,* 107 Wis. 2d 622, 321 N.W.2d 324 (Ct. App. 1982). We see no reason to partially reinstate the "objective" approach that the robber must be armed with something by construing sec. 943.32(2), Stats., to require that the robber produce and display to the victim a dangerous-appearing article. The legislature has not indicated that this should be done.[4]

The construction of sec. 943.32(2), Stats., urged by Hopson has some merit, in that it forecloses the possibility that a suspect might be convicted of armed robbery merely because the victim believed, without support for the belief, that the suspect might be armed. The construction we adopt also forecloses that possibility, however, by requiring that the victim's belief be reasonable. At the same time, it avoids setting an *a priori* limit on

---

[4] *Cf.* Mich. Comp. Laws § 750.529, which provides:

Any person who shall . . . feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber *being armed with* a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to *reasonably believe to be a dangerous weapon,* shall be guilty of a felony . . . . [Emphasis added.]

This section has been interpreted by the Michigan Supreme Court as requiring that the robber possess either a dangerous weapon or some other article. *See People v. Saenz,* 307 N.W.2d 675 (Mich. 1981) (per curiam).

what circumstances would support a reasonable belief that a robber is armed. We conclude the state was not required to present evidence that Hopson possessed a dangerous weapon or a dangerous-appearing article in order to prove him guilty of armed robbery.

Hopson next contends that the evidence was insufficient to support the conviction. The standard of review of whether the evidence supports a conviction is whether the fact finder could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. Conversely stated, the evidence, when considered most favorably to the state, must be so insufficient in probative value and force that as a matter of law no reasonable fact finder could be convinced by it beyond a reasonable doubt. *Davis v. State*, 93 Wis. 2d 319, 322–23, 286 N.W.2d 570, 572 (1980).

Ronald Krahn testified that when he confronted Hopson, Hopson reached under his shirt and said, "I got a gun. You better move." The lunch meat caused such bulges under Hopson's shirt that it was possible that a gun could have been hidden among the bulges. In light of Hopson's statement that he had a gun, Krahn could reasonably believe that one of the bulges was a gun.

Hopson argues that Krahn could not have reasonably believed he was armed, because Krahn watched him stuff the lunch meat into his waistband and must have seen that he had no gun. The evidence did not conclusively establish, however, that Krahn was able to make such a thorough examination of the whole of Hopson's waistband that it was unreasonable for him to believe later that Hopson did have a gun and he had simply not seen it. We conclude the conviction is supported by the evidence. We therefore affirm.

*By the Court.*—Judgment affirmed.