[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1279 
Appellant was indicted and convicted of the offense of first degree robbery. Pursuant to the provisions of the Alabama Habitual Felony Offender Act, the appellant was sentenced to life imprisonment. From said conviction and sentence, this appeal follows. On appeal, the appellant raises the following issues: (1) Was the evidence presented at trial sufficient to sustain the conviction of first degree robbery? (2) Did the trial court commit reversible error when it failed to admonish the jury that they should not consider the unresponsive answer of a witness? (3) Did the trial court erroneously allow testimony from the victim to the effect that he thought the appellant had a gun? (4) Were certain questions from the District Attorney to one of the State's witnesses prejudicial and erroneous? (5) Were certain statements made by the victim prejudicial and inflammatory? (6) Should the trial court have granted appellant's motion for new trial? For the reasons outlined below, these issues are decided against the appellant and the conviction is due to be affirmed.
The State presented evidence which tended to prove that on October 15, 1983, Bobby Joe Thomas, cab driver, went to the Warehouse Grocery in Cullman, Alabama, to pick up a fare. Thomas arrived around 2:00 a.m. and picked up the appellant, as well as two brothers, Jeff and Vernon Brown. Vernon Brown got into the back seat of the cab, while the appellant and Jeff Brown got into the front seat of the cab, with the appellant sitting next to the cab driver. Although, one of the passengers first requested that they be taken to Avenue B, the appellant requested that they be taken instead to Walker's Corner at Berlin, approximately five miles east of Cullman. Before they reached their destination, the appellant told Thomas to "stop the car and pull over." Thomas testified that when he pulled off the road, the appellant "stuck an object in my side" and demanded that he stop the cab. The appellant then grabbed Thomas's right hand and told him "not to try anything," and to get out of the car. The appellant told Thomas that, if he did try something, that he would "blow [Thomas] away." During this time, the appellant continued to hold the object against Thomas's ribs.
Thomas got out of the cab and was told to give the appellant his money and his wallet, which contained $20. The appellant again told Thomas "not to try anything or he would blow me away." At one point, Vernon Brown told the witness that the appellant did not have a gun, but the witness was afraid and did not believe him. The witness testified that he told Vernon Brown that he was "crazy that I wasn't risking my life for $20 or a cab any day." After the appellant had taken the victim's money and wallet, the appellant took the cab and left with Jeff Brown.
On behalf of the State, Vernon Brown testified that on October 15, 1983, he and the appellant "went off together." On that night, the witness, his brother Jeff, and the appellant hired Bobby Joe Thomas to take them by cab to Avenue B and then to Walker's Corner. According to the witness, he got into the back seat of the cab while Jeff and the appellant got into the front seat. The appellant sat next to Thomas, the cab driver. Before they arrived at their destination, the appellant demanded that the cab driver pull over. According to the witness, when the appellant told the taxi driver to get out of the cab, he "had his hand up under his coat and next to [the taxi driver's] ribs." Thomas and the appellant got out of the cab and went to the back of the cab. When the witness followed, he heard the appellant demanding that Thomas give him his billfold or he *Page 1280 
would "blow him away." After he got the wallet and the money, the appellant and Jeff left in the cab while the witness remained with Thomas.
The final witness called by the State was Lieutenant Larry Waldrop, Chief Investigator, Sheriff's Department, Cullman, Alabama. According to the witness, on October 15, 1983, at approximately 3:20 a.m., he investigated a reported robbery and recovered a taxi cab which had been abandoned on the highway near Berlin. The witness testified that he searched the cab and discovered a billfold which contained $20. The wallet also contained some personal effects which indicated that it belonged to Bobby Joe Thomas. At a later time, Thomas identified the billfold and it was returned to him. According to the witness, when he went to the appellant's house at approximately 7:10 a.m. on the day in question, the appellant ran from the police officer. The witness had to give chase before he was able to take the appellant into custody.
After the State rested, defense counsel made a motion for directed verdict of acquittal on the grounds that the State had failed to make out a prima facie case against the appellant. After the court denied the motion, the defense called Jeff Brown to the stand. According to the witness, he, along with his brother, Vernon Brown, and the appellant were together on October 15, 1983. The defense recalled Larry Waldrop to the stand, and he again testified that on October 15 he located a stolen cab and recovered a wallet.
When the defense rested, it renewed its motion for a directed verdict of acquittal based on the State's failure to present aprima facie case. After the trial court denied the motion, closing arguments were made to the jury. The Court then charged the jury on the law as it applied to the facts in this case, and the jury retired. When the jury returned its verdict, it found the appellant guilty of first degree robbery. Since the State had filed notice of its intent to proceed under the provisions of the Alabama Habitual Felony Offender Act, a sentencing hearing was scheduled. On October 23, 1984, before the Honorable Fred C. Folsom, Judge, Circuit Court, Cullman County, Alabama, the State proved that the appellant had committed two prior felonies. These felonies were based on separate guilty pleas dated May 7, 1982, and entered to two charges of third degree burglary. Based on these prior felonies, the appellant was sentenced pursuant to § 13A-5-9,Code of Alabama (1975), to imprisonment for life in the State penitentiary. Subsequent to the sentencing hearing, defense counsel filed a motion for new trial, which said motion was denied by the trial court, after a hearing. From said conviction and sentence, this appeal follows. Appellant raises six issues on appeal.
 I
The first issue raised by the appellant concerns the sufficiency of the evidence presented by the State. Appellant was convicted of first degree robbery, which is defined in §13A-8-41, Code of Alabama (1975), as follows:
 "(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
"(2) Causes serious physical injury to another.
 "(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he is so armed."
The provisions of § 13A-8-43, Code of Alabama (1975), define the offense of third degree robbery as the case where, in the course of committing a theft, the actor does any of the following:
 "(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistence or physical power of resistence; or *Page 1281 
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
Applying these statutory requirements to the facts of this case, it is apparent that the State made out a prima facie case of first degree robbery and thus that the question of appellant's guilt was properly submitted to the jury. Thatch v.State, 397 So.2d 246 (Ala.Cr.App.), cert. denied, 397 So.2d 253
(Ala. 1981); Marvin v. State, 407 So.2d 576 (Ala.Cr.App. 1981).
Appellant, however, argues that the State's case merely proved that appellant's intent was to take the victim's wallet, and not the cash inside, and thus the evidence was insufficient. Under Alabama law, however, there is no requirement that the State prove an actual "taking" of property in order to support a robbery conviction. Grace v. State,431 So.2d 1331, 1333 (Ala.Cr.App. 1982). At trial, the State presented evidence both from the victim and an eyewitness that the victim was forced to give the appellant his wallet and his money; that the victim was afraid; and that the appellant told the victim that he would "blow him away" if he did not cooperate. From this factual outline, it is apparent that aprima facie case of first degree robbery was presented.
Appellant contends, however, that it was the "mere temperamental timidity" of the victim, and not the presence of any physical force on the part of the appellant which resulted in the victim's giving up his wallet. In order to sustain a conviction for first degree robbery, the test to be applied is a "subjective" one which focuses on the "reaction of the victim to the threats of the robber." State v. Hopson, 122 Wis.2d 395,362 N.W.2d 166, 169 (1984) (analysis of Wisconsin armed robbery statute). This approach recognizes that:
 "A victim who is threatened with a supposed weapon which is concealed is put in the same degree of fear and feels as strongly compelled to comply with the robber's demands as a victim who is threatened with a weapon which is openly displayed." Id.
The evidence presented in this case indicated that the appellant stuck "something" into the victim's ribs and told him that he would do as he said or the appellant would "blow him away." The mere fact that no gun was displayed would not be fatal to the prosecution of the case. Stewart v. State,443 So.2d 1362 (Ala.Cr.App. 1983).
This Court has repeatedly held that the State does not have to prove that the defendant actually had a gun in order to sustain a conviction of first degree robbery. Stewart v. State, supra, at 1363. Additionally, under Alabama law, the mere fact that the victim did not actually see a weapon would not defeat a conviction for first degree robbery. James v. State,405 So.2d 71 (Ala.Cr.App. 1981). As this Court in James noted:
 "A conviction of first degree robbery does not require evidence that the accused brandished or displayed any weapon. Indeed, in order to be convicted of first degree robbery an accused need not even be armed with a deadly weapon or dangerous instrument where (1) he possesses any object reasonably believed to be a deadly weapon or dangerous instrument or represents in some manner that he has one and (2) there is no evidence to rebut or refute this reasonable belief or representation. To find as a matter of law that where a gun is not seen a defendant cannot be convicted of first degree robbery would allow all would-be robbers to keep a gun or other dangerous weapon concealed during the crime to be used only if needed. State v. Cooper, 140 N.J. Super. 28, 354 A.2d 713 (1976).* Under our statute, such an interpretation *Page 1282 
would defeat the intent of the legislature and `basic theory' of the statute to `protect the citizen from fear for his or another's health and safety.'"
Id. at 73.
Here, as in James, the appellant's actions "instilled in the victim the reasonable belief that he was armed with a pistol."Id. Thus, the State carried its burden of proof and established a prima facie case of first degree robbery.
 II
The second issue raised by appellant is whether the trial court committed reversible error when it "failed to admonish jury that they were not to consider unresponsive answer of witness as it was not evidence." The testimony which the appellant asserts constitutes reversible error occurred in the following manner:
 "Q And, state, what, if anything happened at that point?
 "A Well, okay. He stuck an object in my side right here which I assumed was a pistol. He told me to shut the car off.
 "MS. PASCHAL: I object, Your Honor. What Mr. Thomas thought is not evidence in this case. Calls for a conclusion of the witness. And, I ask you to tell him merely what happened, not what he thought.
"THE COURT: Okay. You are so instructed.
 "Q (By Mr. Brooks): All right. At that time you felt an object in your side?
"A Yes, sir."
From the above quoted portion of the record, it is not apparent that an adverse ruling was invoked from the trial court. If anything, it would appear that the trial court merely instructed the witness to do as defense counsel had requested, and thus there was no adverse ruling. Walker v. State,416 So.2d 1083 (Ala.Cr.App. 1982). Additionally, since the question had already been answered, the failure of defense counsel to make a motion to exclude the evidence means that this issue has not been preserved for review. Hunt v. State, 453 So.2d 1083
(Ala.Cr.App. 1984); Reeves v. State, 456 So.2d 1156
(Ala.Cr.App. 1984); Hobbs v. State, 401 So.2d 276 (Ala.Cr.App. 1981); Crowe v. State, 435 So.2d 1371 (Ala.Cr.App. 1983).
Although appellant now contends that the response made by the witness went to an ultimate issue in the case, this objection was not made at the trial court level. Since specific grounds of objection waive all grounds not specified, this issue has not been properly preserved for appellate review. Hunt v.State, supra, at 1088.
 III
Appellant's third issue concerns whether the trial court "erroneously allowed inadmissible testimony" from the victim which concerned "facts in issue." In particular, appellant asserts that the victim was improperly allowed to testify that he thought the appellant had a gun; that he did not voluntarily give the appellant his property; and that he could estimate what time he surrendered his wallet and money to the appellant. Even assuming that such testimony was improper, the objections made by defense counsel to this line of questioning at the trial court level were that the questions were "leading"; "suggestive"; "repetitious"; and "redundant." Although appellant now states that the testimony concerned "ultimate fact[s] in issue," this objection was not brought to the attention of the trial court. As a general rule, specific objections made at trial waive additional grounds of error for purposes of appellate review. Hunt v. State, supra.
 IV
Appellant additionally asserts that the victim made certain "inadmissible statements" which were of such a "prejudicial and inflammatory" nature that, notwithstanding the trial court's prompt instructions to the jury to disregard the testimony, the effect could not be eradicated. A *Page 1283 
review of the testimony as a whole, however, indicates that the trial court, as well as the State's attorney, proceeded in a competent and cautious manner in its examination of the witnesses at trial. A large portion of the transcribed testimony consists of objections made by defense counsel which, in many cases, were irrelevant and disruptive. The trial court, however, exhibited great patience and allowed defense counsel wide latitude in its aggressive efforts to conduct its defense and to limit the presentation of the State's case. Taken as a whole, the record does not reveal an atmosphere of prejudice, contrary to appellant's position, and thus there was no error.
 V
In the fifth issue presented on appeal the appellant argues that, as a result of a certain question posed by the State's attorney to Lieutenant Larry Waldrop, the appellant failed to receive a "fair and impartial trial." The question which appellant asserts was improper concerned on "how many occasions" this particular witness had seen the appellant during the three or four years that he had known him. Although appellant contends that the questions were designed to show that the appellant "must have a prior criminal record," the questions were never answered by the witness and the court promptly sustained the objection made by defense counsel. Thus, the possible prejudicial effects of any improper questions or inferences thereto were cured by the prompt action of the trial court in sustaining the objections to the questions. Wadsworthv. State, 439 So.2d 790 (Ala.Cr.App. 1983), cert. denied,466 U.S. 930, 104 S.Ct. 1716, 80 L.Ed.2d 188 (1984); Glenn v.State, 395 So.2d 102 (Ala.Cr.App. 1980), cert. denied,395 So.2d 110 (Ala. 1981). Since there was no adverse ruling, there is nothing for this Court to consider on appeal. Yates v.State, 390 So.2d 32 (Ala.Cr.App. 1980). Contrary to the appellant's position, it is not obvious that the "mere propounding" of the questions to the State's witness resulted in any error prejudicial to the rights of the accused. Taken as a whole, the record reveals that the appellant had a full, fair, and impartial trial, and no error was committed at the trial court level.
 VI
The final issue presented by the appellant is whether the trial court erred when it failed to grant the defense motion for a new trial. The grounds for the new trial have been discussed and analyzed in the previous issues. A review of these grounds presents no additional issue which has not been decided adversely to the appellant as outlined above. Thus, the trial court did not err when it denied the defense motion for a new trial.
For the reasons outlined above, the decision of the trial court is due to be, and in all respects is, affirmed.
AFFIRMED.
All the Judges concur.
* As the New Jersey Court in State v. Cooper, 140 N.J. Super. 28, 354 A.2d 713 (1976), rev'd on other grounds, 165 N.J. Super. 57, 397 A.2d 702 (1979) noted, even a finger "when placed in the pocket in the shape of a gun and combined with threatening words or gestures, [becomes] an object [which] is capable of making a victim believe that defendant was armed." 354 A.2d at 716. The New Jersey Court concluded that "[t]his is the very mischief for which the statute provided a remedy." Id.