PER CURIAM.
The appellant, Adam Dwayne Lucas, was convicted of two counts of robbery in the first degree, violations of § 13A-8-41, Ala.Code 1975. He was sentenced to concurrent terms of 20 years in prison for each count.
The State’s evidence tended to show the following. On January 1, 2007, Daniel De-Quesada, a pizza-delivery driver, was robbed by a black man wearing a hooded jacket and a ski mask. DeQuesada testified that the man pointed a gun at him and ordered him to surrender his money. Diana Horsewood testified that when she was delivering pizzas on January 2, 2007, a black man wearing a hooded jacket and ski mask robbed her. She testified that the robber pointed a gun at her. Neither could identify Lucas as the person who robbed them, although-both said that the *382 individual who robbed them was driving a sport-utility vehicle (“SUV”).
David Shutt, a Decatur police officer, testified that on January 3, 2007, Lucas reported that his vehicle, a pewter-colored SUV, had been stolen. The vehicle was later recovered after suspects in a home invasion abandoned the vehicle while being pursued by police. Pieces of a toy gun were recovered from the vehicle.
Investigator Greg Pinkard of the Franklin County Sheriffs Department testified that Lucas admitted that he and his code-fendant, Ira Harris, had robbed two pizza-delivery drivers.
The jury convicted Lucas of two counts of robbery in the first degree. At Lucas’s sentencing hearing, the circuit court made the following findings of fact:
“I’ll make a finding that it’s a plastic toy gun. I don’t think there’s any dispute that [interruption by counsel] that—
“I’ll make that finding regardless of what the analysis would or would not show. I’m enough [interruption by counsel] satisfied that that’s a plastic toy gun; however, I am convinced that the law is that it could be a loaded gun or an unloaded gun or it could be a facsimile or plastic or toy gun. But the standard is that it is a deadly weapon under the terms of the definition of the statute if it would lead any person present to reasonably believe it to be a deadly weapon or a dangerous instrument.
“I think the testimony there is uncon-troverted that regardless whether it was a toy or cocked and loaded pistol, the person believed it to be a deadly weapon or dangerous instrument. They believed it to be a toy — not a toy but a real pistol.”
(R. 358-59.)
The only issue Lucas raises on appeal is whether the circuit court erred
when it applied the firearm-enhancement statute, § 13A-5-6(a)(4), Ala.Code 1975, to enhance his sentence for robbery because, he asserts, the gun he used in the robberies was a toy gun and not a “firearm or deadly weapon.” He relies on Sanders v. State, 947 So.2d 432 (Ala.Crim.App.2006), and Snowden v. State, 842 So.2d 24 (Ala.Crim.App.2002), to support his argument.
Section 13A-8-41, Ala.Code 1975, defines robbery in the first degree, and provides:
“(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
“(1) Is armed with a deadly weapon or dangerous instrument; or
[[Image here]]
“(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.”
Section 13A-8-43, Ala.Code 1975, provides, in pertinent part:
“(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
“(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
“(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.”
*383 Section 13A-5-6(a)(4), Ala.Code 1975, often referred to as the firearm-enhancement statute, provides:
“For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, or a Class A felony criminal sex offense involving a child as defined in Section 15-20-21(5), [the sentence shall be] not less than 20 years.”
Subsection (a)(4), Ala.Code 1975, was added by an amendment to § 13A-5-6 in 1981. In amending this statute, the legislature wrote that its purpose was “[t]o amend Section 13A-5-6, Code of Alabama 1975, relating to sentences of imprisonment for felonies, so as to set the penalty for using or attempting to use a deadly weapon in the commission of a felony.” Title to Act No. 81-840, Ala. Acts 1981.
Section 13A-5-6, Ala.Code 1975, does not define a firearm or deadly weapon. However, “firearm” is defined in § ISA-Slid), Ala.Code 1975, as: “A weapon from which a shot is discharged by gunpowder.” “Deadly weapon” is defined in § 13A-1-2(7), Ala.Code 1975, as:
“A firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious physical injury. The term includes, but is not limited to, a pistol, rifle, or shotgun; or a switchblade knife, gravity knife, stiletto, sword, or dagger; or any billy, blackjack, bludgeon, or metal knuckles.”
In examining the above statutes, we keep in mind the following principles of statutory construction:
“ ‘The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. If possible, the intent of the legislature should be gathered from the language of the statute itself.’ Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala.1991).
‘Where a statutory pronouncement is distinct and unequivocal, there remains no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985) (citing Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co., 431 So.2d 534 (Ala.1983)).”
Ex parte Soto, 991 So.2d 691, 692 (Ala.2008).
“A basic rule of review is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation. This is especially true in death penalty cases. Ex parte Clements, Ala., 370 So.2d 723 (1979); Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956). Penal statutes are to reach no further in meaning than their words. Clements, supra; Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952).”
Berard v. State, 402 So.2d 1044, 1050 (Ala.Crim.App.1980).
As stated above, Lucas relies on Sanders and Snowden to support his argument. In Sanders, the defendant was convicted of robbery in the first degree and his sentence was enhanced pursuant to § 13A-5-6(a)(4), Ala.Code 1975. The testimony at trial showed that Sanders entered a Texaco Food Mart, put his hand under his shirt with his finger sticking out so it appeared that he had a gun, and demanded $200. We held that the circuit court incorrectly applied § 13A-5-6(a)(4), Ala.Code 1975. It was undisputed that the victim could clearly see that Sanders was not armed with a gun but was using his finger to mimic a weapon. In Snowden, this Court held that a Rule 32 petitioner’s claim that he merely stated that he was armed during the robbery, when in fact he was not, *384 required a remand to the trial court for specific findings of fact. We stated:
“The appellant’s argument may be meritorious. The firearm enhancement set forth in § 13A-5-6(a)(4), Ala.Code 1975, applies only in those cases ‘in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony.’ In this case, based on statements it made during the guilty plea proceedings, it appears that the trial court mistakenly believed that the firearm enhancement could be applied even in cases in which the defendant only represented that he was armed with a firearm. However, such an interpretation is contrary to the plain language of § 13A-5-6(a)(4), Ala.Code 1975. During the Rule 32 proceedings, the State did not specifically refute, and the circuit court did not address, the appellant’s contention. Therefore, we remand this case to the circuit court with instructions that that court make specific, written findings of fact as to the appellant’s contention.”
842 So.2d at 25.
Our research revealed few Alabama cases that address the scope of § 13A-5-6(a)(4), Ala.Code 1975. See Ex parte McCree, 554 So.2d 336 (Ala.1988) (firearm enhancement may be applied to only those felonies involving intentional criminal conduct); Sorrells v. State, 667 So.2d 142, 144 (Ala.Crim.App.1994) (firearm enhancement may be applied by the circuit court even in the “absence of a specific jury finding with regard to the use of a firearm”); Hammond v. State, 497 So.2d 558 (Ala.Crim.App.1986) (firearm enhancement may be applied to the sentence of an unarmed codefendant when the other codefendant is armed). Indeed, our research has revealed no case that specifically holds that using a toy gun during a robbery necessitates the application of the firearm-enhancement statute.
 In determining whether there is sufficient evidence to support a conviction for robbery in the first degree, we look to the victim’s perceptions:
“In a prosecution for first degree robbery, the robbery victim does not actually have to see a weapon to establish the element of force; his or her reasonable belief that the robber is armed is sufficient. Dinkins v. State, 584 So.2d 932 (Ala.Cr.App.1991); Breedlove v. State, 482 So.2d 1277 (Ala.Cr.App.1985). The test to determine whether a person reasonably believes that an object is a deadly weapon is a ‘subjective’ one. James v. State, 549 So.2d 562 (Ala.Cr.App.1989). ‘It focuses on the “reaction of the victim to the threats of the robber.” State v. Hopson, 122 Wis.2d 395, 362 N.W.2d 166, 169 (1984).’ 482 So.2d at 1281.”
Rice v. State, 620 So.2d 140, 141-42 (Ala.Crim.App.1993).
However, when determining whether a defendant’s sentence should be enhanced pursuant to § 13A-5-6(a)(4), Ala.Code 1975, we must look to the statutory definitions of the terms “firearm” and “deadly weapon” contained in § 13A-5-6(a)(4). See McCaskill v. State, 648 So.2d 1175, 1178 (Ala.Crim.App.1994) (“In this case, the appellant was sentenced pursuant to Ala.Code 1975, § 13A-5-6(a)(4), which provides that the sentence for ‘a Class A felony in which a firearm or deadly iveap-on was used or attempted to be used in the commission of the felony, [is] not less than 20 years.’ Emphasis added. Clearly, a ‘BB gun’ is not a ‘firearm’ which is defined as ‘[a] weapon from which a shot is discharged by gunpowder.’ § 13A-8-l(4).”); Sumpter v. State, 480 So.2d 608, 614 (Ala.Crim.App.1985) (“The definition of deadly weapon does not require that a firearm be *385 loaded at the time of the offense. ... The trial judge properly sentenced the appellants in this cause in accordance with [§ 13A-5-6(a)(4) ].”).
Because there is little Alabama law on this issue, we have looked to the federal courts for guidance. The comparable federal sentencing guideline, U.S.S.G. § 2B3.1(b)(2), 18 U.S.C., provides enhanced penalties for those who commit robbery:
“(A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished or possessed, increase by 5 levels;' (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished, or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels.”
In addressing the scope of this federal statute, the United States Court of Appeals for the Eleventh Circuit in United States v. Koonce, 991 F.2d 693 (11th Cir.1993), stated:
“The issue squarely presented by the facts of this case is how to treat for robbery offense level enhancement purposes an object that appears to be a firearm but in reality is merely a dangerous instrument, as those terms are currently defined in the Sentencing Guidelines. This issue is one of first impression, due in large part to the fact that until a November 1, 1991 amendment to the Guidelines, brandishing a firearm and brandishing a dangerous weapon were treated the same. Old U.S.S.G. § 2B3.1(b)(2)(C) provided that a robbery defendant who had brandished, displayed, or possessed ‘a firearm or other dangerous weapon’ received an enhancement of three offense levels.
“The amendment distinguished between firearms and dangerous weapons. Under the amended version of the Guidelines, applicable to this case, the two types of weapons are treated differently. Guideline provisions in effect now and at the time of sentencing provide that a robbery defendant who ‘brandished, displayed, or possessed’ a firearm is to have his base offense level increased by five levels. U.S.S.G. § 2B3.1 (b)(2)(C). If the object ‘brandished, displayed, or possessed’ is a dangerous weapon instead of a firearm, then the enhancement is three levels, not five. Id. § 2B3.1 (b)(2)(E).
“Supporting Koonce’s position that a BB gun is a dangerous weapon and not a firearm is this seemingly straightforward definition of firearm:
“ ‘ “Firearm” means (i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver of any such weapon; (iii) any firearm muffler or silencer; or (iv) any destructive device. A weapon, commonly known as a “BB” or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not afire-arm.’
“Id. § 1B1.1, comment, (n. 1(e)) (emphasis added). That seems simple enough.
“The Government argues, and the district court found, however, that the victim in this case quite reasonably thought that the pistol was the real thing, a firearm. Koonce cannot question the reasonableness of such a perception, because he confessed that he had used ‘a BB gun of mine that looks like a real gun, somewhat like a 45 automatic.’ Koonce’s contention is that reality, and not appearance, is the criterion insofar as the Guidelines’ definition of firearms is concerned. The strongest support for *386 his position arises from the fact that commentary to the Guidelines expressly provides that insofar as dangerous weapons are concerned, appearances count as well as reality; but no such provision is made concerning firearms. The same application note that gives the definition of ‘firearm’ quoted above also contains in another subpart this definition:
“ ‘ “Dangerous weapon” means an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon.’
“Id. comment, (n. 1(d)) (emphasis added).
“That is not all. The commentary says the same thing again in a second place. The second application note to the robbery offense level section of the Guidelines, U.S.S.G. § 2B3.1, plainly states:
“ ‘When an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon for the purposes of subsection (b)(2)(E).’
“Subsection (b)(2)(E) is the provision for a three-level increase in the offense level where a dangerous weapon was brandished, displayed, or possessed. By contrast, there is no provision that an object that appeared to be a firearm should be treated as a firearm for purposes of a five-level increase under § 2B3.1(b)(2)(C).
“The district court stated no rationale for treating the BB gun as a real firearm except to state its conclusion that, ‘Thinking that it was real equates it with being a firearm that could do her harm and therefore five levels are appropriate in this situation.’ Under the Guidelines and their commentary, that would be true insofar as a three-step increase for dangerous weapons is concerned, but it is at least impliedly not true with lookalike firearms and a five-step enhancement.
“The Government contends that, ‘the only support for defendant’s argument that victim perception is irrelevant is the application note’s silence on the issue,’ and says, ‘[tjhat silence is only conspicuous because the analogous dangerous weapon application note expressly addresses victim perception.’ That may be true, but merely describing the argument does not rebut it. Conspicuously absent from the Government’s brief is any credible explanation for why the Sentencing Commission, if it intended victim perception to control over reality for firearms enhancement, would not have said so as it did twice for dangerous weapon enhancement.
“From that which is and that which is not in the commentary, we conclude that if the Sentencing Commission had intended to have appearances count over reality for ‘firearm’ definition purposes it would have said so, as it did for ‘dangerous weapon’ definition purposes. The canon of statutory construction that the inclusion of one implies the exclusion of others is well-established. See, e.g., Gozlon-Peretz v. United States, 498 U.S. 395, 403-404, 111 S.Ct. 840, 846-47, 112 L.Ed.2d 919 (1991); Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983); United States v. Giltner, 972 F.2d 1563, 1565 (11th Cir.1992); United States v. Jordan, 915 F.2d 622, 628 (11th Cir.1990), cert. denied, [499] U.S. [979], 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991). The popularity of that canon with courts stems from more than the fact that it dresses well in Latin: inclusio unius est exclusio alter- *387 ius. The canon is frequently cited and employed because in many circumstances it makes good sense. This case is a prime example.
“We hold that a BB gun that looks like a real firearm and is perceived by the victim of a robbery to be such is not a firearm for purposes of the five-step enhancement of the base offense level for robbery under U.S.S.G. § 2B3.1 (b)(2)(C). It is a dangerous weapon which leads to a three-step enhancement under § 2B3.1(b)(2)(E).”
991 F.2d at 696-98. See United States v. Robinson, 20 F.3d 270 (7th Cir.1994).
Unlike Congress, Alabama has not enlarged the definition of “deadly weapon” contained in § 13A-l-2(7), Ala.Code 1975, to encompass a toy gun. We are bound by the relevant statutes. A toy gun is not a “firearm” as that term is defined in § 13A-8-l(4), Ala.Code 1975. Nor is a toy gun a “deadly weapon” as that term is defined in § 13A-l-2(7), Ala.Code 1975. (See the Alabama Supreme Court’s discussion in Herndon v. State, 563 So.2d 1065 (Ala.1990).).
Accordingly, the circuit court erred in enhancing Lucas’s sentences under the firearm-enhancement statute. This case is hereby remanded to the circuit court for that court to resentenee Lucas without application of the enhancement contained in § 13A-5-6(a)(4), Ala.Code 1975. Due return should be filed in this Court within 52 days from the date of this opinion.
REMANDED WITH INSTRUCTIONS. 
WISE, P.J., and KELLUM and MAIN, JJ., concur.
WINDOM, J., concurs in the result.
WELCH, J., dissents, with opinion.