LYONS, Special Justice
(concurring in part and concurring in the result in part).
I concur in the main opinion insofar as it affirms the judgment of the Court of Criminal Appeals as to James Lee Ware’s conviction and sentence for rape.'
*422 I concur in the result in the main opinion insofar as it reverses the judgment of the Court of Criminal Appeals as to Ware’s convictions and sentences for first-degree robbery and first-degree burglary. The main opinion and Justice Shaw’s special writing, dissenting from that portion of the main opinion, focus on the sufficiency of the evidence as to the state of mind of the victim, L.M., concerning the sharp object she felt in a back pocket of Ware’s pants. I do not consider that issue relevant.
In Part III of his petition for the writ of certiorari, Ware refers to the Court of Criminal Appeals’ applying an irrelevant statute and notes that there was no evidence indicating that he threatened L.M. with, fashioned, or used an object during the commission of the offense and no evidence indicating that he made any overt act with respect to an object. Ware’s brief argues that the record is devoid of any evidence of threatening. Ware’s contentions are accurate.
With respect to first-degree robbery, § 13A-8-41(a), Ala.Code 1975, provides:
“A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
“(1) Is armed with a deadly weapon or dangerous instrument....”
Section 13A-8-41(b), Ala.Code 1975, provides:
“(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he was so armed.”
If Ware had been apprehended at the scene and found to have had a knife on his person, the requisite element for first-degree robbery would be satisfied without any inquiry into the reasonable belief of the victim. Of course, that was not the case here. The Court of Criminal Appeals relied upon § 13A-8-41(b) as the basis for an alternative means of proof of a deadly weapon or dangerous instrument, thereby making the victim’s belief relevant. The record reflects that the State did not rely on § 13A-8-41(b) at trial.
The main opinion’s rationale for reversing the judgment of the Court of Criminal Appeals on Ware’s robbery and burglary convictions is the insufficiency of L.M.’s testimony that she thought she felt something sharp as proof of a reasonable belief of- the presence of a deadly weapon or dangerous instrument under § 13A-8-41(b). In effect, according to the main opinion, L.M.’s belief as to the presence of such an object is simply not reasonable.
Justice Shaw’s special writing, relying on the alternative means of proof of the existence of a deadly weapon or dangerous instrument in § 13A-8-41(b), observes:
“[T]he State can also meet its burden of showing that a defendant was armed with a deadly weapon or dangerous instrument by presenting evidence that the perpetrator was in possession ‘of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument-’ § 13A-8-41 (b), Ala.Code 1975.”
181 So.3d at 426 (second emphasis added). Justice Shaw then bolsters the reasonableness of L.M.’s conclusion as to the presence of such an article by relying on cases holding that the victim need not actually see the object — the deadly weapon or dangerous instrument — to conclude that one is present. I am not persuaded that these cases apply here. This is so because “used or fashioned” as that phrase appears in *423 § 13A-8-41(b) requires some conduct on Ware’s part. It is undisputed that L.M.’s encounter with the sharp object was initiated by her hand coming in contact with Ware’s back pocket while he was raping her.
Justice Shaw includes a quote from Lucas v. State, 45 So.3d 380 (Ala.Crim.App.2009), that references cases in which the victim had a reasonable belief concerning the object or article found to be a deadly weapon or dangerous instrument, but in all of those cases the defendant was an actor with respect to the object or article that had frightened the victim and whs not passive with respect to such object or article, as is the case here. See Dinkins v. State, 584 So.2d 932 (Ala.Crim.App.1991), in which the defendant pointed something at the victim that looked like a gun; Breedlove v. State, 482 So.2d 1277 (Ala.Crim.App.1985), in which the defendant stuck an object in the victim’s side; and James v. State, 549 So.2d 562 (Ala.Crim.App.1989), in which the defendant had his hand in his pocket and gestured as if he had a pistol! In Lucas, the defendant pointed a gun at the victim that turned out to be a plastic toy. The quote from Lucas includes a quote from Rice v. State, 620 So.2d 140 (Ala.Crim.App.1993), in which the victim saw a small brown handle protruding from the defendant’s pocket and the defendant said “don’t make me pull this gun out.” 620 So.2d at 141. The quote from Rice included in Lucas and quoted in Justice Shaw’s special writing includes the following telling- statement from Breedlove, quoting with approval a Wisconsin case: “It [the statute] focuses on the ‘reaction of the victim to the threats of the robber.’ State v. Hopson, 122 Wis.2d 395, 362 N.W.2d 166, 169 (1984).” 482 So.2d at 1281 (emphasis added). In a footnote, Justice Shaw also relies upon Ex parte Williams, 780 So.2d 673 (Ala.2000), in which the defendant grabbed a can of beans and used it to hit the defendant. As noted, there is no evidence here of a threat by Ware involving the sharp object.
Assuming we cohld apply § 13A-8-41(b) even though it was not relied upon by the State at trial, the absence of any conduct by Ware with respect to the article beyond merely having it on his person precludes application of § 13A-8-41(b), i.e., the article was not “used"' or fashioned” in any manner. I agree with-Ware’s contention that the Court of Criminal Appeals applied an irrelevant statute. I therefore concur in the result as to the main opinion’s reversal of the conviction for first-degree robbery. If the subjective belief of the victim reigns supreme, regardless of lack of activity of the defendant , with respect to the article causing fear that the article is susceptible to being used or fashioned as a deadly weapon or dangerous instrument, then § 13A-8-41(b) would be available where the victim concluded that various articles on the défendant’s person, such as a belt or a heavy belt buckle or shoes or boots or a ballpoint pen or shirt sleeves or a pant leg, might be so used or fashioned. The scope of § 13A-8-41 (b) is then cab-ined only by -the imagination of the victim, a result not- consistent with the text of § 13A-8-41(b).
Because of the inapplicability of § 13A-8-41(b) to the robbery conviction, I do not reach the question whether it could be applied in a prosecution for. first-degree burglary, as is urged by Justice Shaw. I therefore also concur in the result as to the main opinion’s reversal of the Court of Criminal Appeals’ affirmance of Ware’s conviction for first-degree burglary.
MAIN, J., concurs.
MOORE, Chief Justice
(concurring in part and dissenting in part).
I concur as to the reversal of the Court of Criminal Appeals’ judgment affirming *424 James Lee Ware’s burglary and -robbery convictions because the State- failed to prove that Ware was armed with a deadly weapon or that he .used or threatened the immediate use of a dangerous instrument in committing the offenses with which he was charged.
I dissent as to the affirmance of the Court of Criminal Appeals’ judgment affirming Ware’s conviction and sentence for the rape charge. I believe the Confrontation Clause of the Sixth Amendment to the United States Constitution was not satisfied by the testimony of Jason Kokoszka, Ph.D., the molecular geneticist for Orchid Cellmark Laboratory (“Cellmark”). Kok-oszka supervised and reviewed the DNA testing and signed the DNA-profile reports prepared by Cellmark. He also kept L.M.’s case file as Cellmark’s 'custodian of records.
The Confrontation Clause guarantees that, “in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” Amend. VI, U.S. Constitution (emphasis added). As many as six Cellmark technicians performed DNA tests on L.M.’s vaginal swabs. The technicians who performed the DNA tests and prepared the DNA-profile reports were “the witnesses against [Ware].” The Confrontation Clause protects the accused’s right to confront the witnesses against him, not the witnesses’ supervisor or reviewer, or the custodian of records. Other than the DNA evidence, no witnesses or evidence was presented that would identify-the rapist in this case. Under these facts, Ware has been denied his Sixth Amendment right to cross-examine the witnesses against him. I respectfully dissent as to that part of the main opinion that in effect affirms Ware’s conviction for rape.
BOLIN, Justice
(concurring in part and dissenting -in part).
I concur as to Part II of the main opinion, which affirms the decision of the Court of Criminal Appeals upholding James Lee Ware’s conviction for first-degree rape in light of a Confrontation Clause challenge. I dissent as to Part III, which reverses the Court of Criminal Appeals’ judgment on Ware’s burglary and robbery convictions, and I join Justice Shaw’s well reasoned dissent concerning the sufficiency of the evidence as to those two charges.
SHAW, Justice
(concurring in part and dissenting in part).
I concur in affirming the decision Of the Court of Criminal Appeals affirming James Lee Ware’s first-degree-rape conviction.
As to that part of the main opinion that reverses the decision of the Court of Criminal Appeals affirming the . first-degree-robbery and first-degree-burglary convictions, however, I dissent. The main opinion holds that a rational juror could not conclude that a sharp object in the pocket of the pants of a man committing burglary, robbery, and rape was a deadly weapon. I disagree.
. The issue here concerns the sufficiency of the evidence. Specifically, Ware , claims that the evidence.was insufficient to show that he was armed with a deadly weapon and therefore insufficient to support his convictions for first-degree robbery and first-degree burglary.
“ ‘ “In determining, the sufficiency of the evidence to-sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider-all evidence in á light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 *425 (Ala.1985).” Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not -the function of this Court to. decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Crim.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable. doubt. Davis v. State, 598 So.2d 1054 (Ala.Crim.App.1992). Thus, “[t]he,role of appellate courts is not to say what the facts are. [Their role]- is to judge whether the evidence is legally sufficient to allow submission of an issue for deci-. sion [by] the jury.’’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978) (emphasis original).’ ”
Ex parte Tiller, 796 So.2d 310, 312 (Ala.2001) (quoting Ex parte Woodall, 730 So.2d 652, 658 (Ala.1998)).
Accepting as true all the evidence introduced by the State, according the State all. legitimate inferences from the evidence, and considering all-the evidence in a light most favorable to the State, the testimony at trial shows the following: L.M. awoke sometime during the night with .Ware on top of her, holding a plastic bag over her face. The jury heard the following testimony from L.M.:
“I was disoriented at first and very confused about what was going on. And I realized that I was awake and there was someone on top of me. And he immediately started trying to' push my legs apart and pulling my — I had shorts' on — and pulling my shorts off and my underwear and trying to — trying to enter me sexually. And I started crying and begging — begging him to stop and to not hurt me. I was flailing my arms and I felt, I thought, something sharp in his back pocket, so I .started begging him not to kill me. .
“And then he told me to-put: ft ⅛ and I was screaming and crying,- no, no. And he tried to go down and force himself on me orally, and I tried to keep -my legs pushed together and I was begging him more. And then at some point he did enter me on top of me;...
[[Image here]]
“He told me to get up and he moved me over to my dresser. And tried to put me -on top of — sit me on top of my dresser and tried to physically 'enter me that way but was unable to reach me. And then he moved me off the dresser and laid me on top- of my bed face down and- then he- entered me vaginally that way.”-
(Emphasis added.) Ware tied up L.M. and blindfolded her while he raped her, and he retied her legs when he was done. L.M. testified:
“He told me — or he turned me over on my back and retied my legs and told me not to move and be quiet and then-he left -the bedroom., I heard him leave the bedroom and I was trying to hear what was going on. I heard him move around in my house. I wasn’t sure where he was and I was panicking because I was afraid he was going,to- come back and hurt me, kill me.’-’ ■ '■
Ware stole • various items from L.M.’s home, including jewelry and her underwear. - -
To be convicted of first-degree robbery, the defendant must be “armed with a deadly weapon or dangerous instrument....” Ala.Code 1975, § Í3A-8-41(a)(1). A “deadly weapon” includes, but is not limited to, “a pistol, rifle, or shotgun; or a switch-blade knife, gravity knife, stiletto, sword, or dagger; or any billy, black-jqck, bludgeon, or metal knuckles.” Ala.Code 1975, § 13A-l-2(7). The Code *426 section does not limit the definition to items that are weapons per se but includes items fashioned to be used as a weapon: “anything manifestly designed, made, or adapted for the purposes of inflicting death or serious physical injury.” Id. A sharp object might not be a knife, but any sharp object can be “manifestly designed, made, or adapted for the purposes of inflicting death or serious physical injury.” (Emphasis added.)
This Court does not “decide whether the evidence is believable beyond a reasonable doubt,” Ex parte Woodall, 730 So.2d 652, 658 (Ala.1998) (citing Pennington v. State, 421 So.2d 1361 (Ala.Crim.App.1982)); instead, it looks here to see whether there was sufficient evidence from which the jury could conclude — viewing all the evidence — that the sharp object in Ware’s pocket was a deadly weapon.
I believe that the jury could legitimately infer from the evidence that a sharp object — when found in the possession of a man committing the ads described above — is a deadly weapon. Ware broke into L.M.’s house at'night while she was asleep, covered her eyes, tied her up, and raped her, even while she struggled against him and begged for her life. L.M. told the jury that the sharp object caused her to believe that Ware was going to hurt or kill her (“so I started begging him not to kill me”). The jury in this case might have concluded that a sharp object in the pocket of a random person on the street might be one of “numerous objects” that are not deadly weapons. But we are not reviewing such a hypothetical scenario— we are reviewing the evidence in the context presented in this case. A rational juror could conclude beyond a reasonable doubt that a sharp object was a deadly weapon when it was found in the possession of a man intent on rape, robbery, and burglary — a man who broke into a home at night, who blindfolded and tied his victim, and who ignored her struggling and pleading and raped her. A juror could readily, easily, and beyond a reasonable doubt believe that a sharp object — when in the possession of a man who planned and executed these acts — was a deadly weapon. It would certainly not be irrational for a juror to so conclude.
The main opinion, however, appears to take the position that the sharp object could have been one of “numerous objects” that were not weapons. 181 So.3d at 420 n. 18. But to “accord the State all legitimate inferences” from the evidence requires me to accept the jury’s legitimate inference that the sharp object was a weapon and forbids me from accepting the alternate inference that it was not. Therefore, I believe the evidence was sufficient under § 13A-8-41(a).
Under the first-degree-robbery Code section, the State can also meet its burden of showing that a defendant was armed with a deadly weapon or dangerous instrument by presenting evidence that the perpetrator was in possession “of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument_” § 13A-8-41(b), Ala.Code 1975. That evidence is “prima facie evidence under subsection (a) of this section that he was so armed.” Id. This argument was raised by the State on appeal to the Court of Criminal Appeals and was relied on by that court. Ware, in his application for rehearing to that court, did not challenge the use of this Code section to affirm his conviction.[20] Because § ISA- *427 8-41(b) is addressed by the main opinion, I will address it as an alternate means of affirming the Court of Criminal Appeals’ judgment.
When it comes to determining whether one could “reasonably believe” under § 13A-8-41(b) that an article is a deadly weapon, the appellate courts look to the victim’s subjective perception:
“In determining whether there is sufficient evidence to support a conviction for robbery in the first degree, we look to the victim’s perceptions:
‘“In a prosecution for first degree robbery, the robbery victim does not actually have to see a weapon to establish the element of force; his other reasonable belief that the robber is armed is sufficient. Dinkins v. State, 584 So.2d 932 (Ala.Crim.App.1991); Breedlove v. State, 482 So.2d 1277 (Ala.Crim.App.1985). The test to determine whether a person reasonably believes that an object is a deadly weapon is a “subjective” one. James v. State, 549 So.2d 562 (Ala.Crim.App.1989). “It focuses on the ‘reaction of the victim to the threats of the robber.’ State v. Hopson, 122 Wis.2d 395, 362 N.W.2d 166, 169 (1984).” 482 So.2d at 1281.’ ”
Lucas v. State, 45 So.3d 380, 384 (Ala.Crim.App.2009) (quoting Rice v. State, 620 So.2d 140, 141-42 (Ala.Crim.App.1993)). The fact that no weapon is seen is no barrier to proving that the defendant was armed as described in § 13A-8-41(b): “[Ujnder Alabama law, the mere fact that the victim did not actually see a weapon would not defeat a conviction for first degree robbery.” Breedlove v. State, 482 So.2d 1277, 1281 (Ala.Crim.App.1985).
Accepting as true all the evidence introduced by the State, according the State all legitimate inferences from the evidence, and considering all the evidence in a light most favorable to the State, I must conclude that there is sufficient evidence to show that the victim here reasonably believed the sharp object in Ware’s pants pocket was a deadly weapon or dangerous instrument.[21] Specifically, L.M. not only felt a sharp object in Ware’s pocket but feeling the object also actually caused her to fear and beg for her life {“so I started begging him not to kill me”). L.M. feared for her life because she felt the sharp object in Ware’s pocket. I can reach no conclusion other than that L.M. subjectively perceived that the sharp object in Ware’s pocket was a weapon he could use to kill her. I reach this conclusion because that is a “legitimate inference” from her testimony: she felt a sharp object in Ware’s pocket, “so” she believed Ware might kill her. Certainly, her testimony is sufficient evidence from which the jury could have concluded the same beyond a reasonable doubt.
Because the State presented sufficient evidence that, under § 13A-8-41(a), Ware was armed with a deadly weapon, and additionally, that L.M. reasonably believed that Ware was armed with a deadly weapon under § 13A-8-41(b), I would affirm the first-degree-robbery conviction. Fur *428 ther, because the jury found that Ware was armed with a deadly weapon under § 13A-8-41 (either part (a) or (b)), such a finding is sufficient to show that Ware was armed with a deadly weapon for purposes of first-degree burglary under Ala.Code 1975, § 13A-7-5, as that Code section existed at the time of the offense in 1993.
STUART, BOLIN, and BRYAN, JJ., concur.

. Instead, Ware argued that the evidence was insufficient to prove the existence of a deadly weapon under that Code section.

. Given that this Court has previously accepted without a technical analysis that a can of beans or peas is a deadly weapon or dangerous instrument for purposes of proving first-degree robbery, I see no question whether a sharp object is considered as such. Ex parte Williams, 780 So.2d 673, 674 (Ala.2000) (“In its unpublished memorandum, the Court of Criminal Appeals stated that a can of vegetables, used as the robbery victim says the robber in this case used a can (or cans) of peas or beans, can constitute a ‘dangerous weapon,’ within the meaning of that term as it is used in § 13A-8-41. We agree. We think it unnecessary to further address Williams’s argument that he was not armed with a 'deadly weapon or dangerous instrument.' ”).